IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTELLAS PHARMA, INC., ASTELLAS IRELAND CO., LTD. and ASTELLAS PHARMA GLOBAL DEVELOPMENT, INC.,<br><br>    Plaintiffs,<br>  v.<br><br>ACTAVIS ELIZABETH LLC, et al.,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 16-905-JFB-CJB<br>CONSOLIDATED<br><br>[REDACTED]<br><br>Original Filing Date: April 2, 2019<br>Public Filing Date: April 17, 2019 |

**DEFENDANTS' OPENING DISCOVERY LETTER BRIEF**

| | |
|---|---|
| **HEYMAN ENERIO**<br>**GATTUSO & HIRZEL LLP**<br><br>Dominick T. Gattuso (#3630)<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>dgattuso@hegh.law<br><br>*Attorneys for Defendants Sawai Pharmaceutical Co., Ltd. and Sawai USA, Inc.* | **YOUNG CONAWAY STARGATT &**<br>**TAYLOR, LLP**<br><br>Adam W. Poff (#3990)<br>Pilar G. Kraman (#5199)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>apoff@ycst.com<br>pkraman@ycst.com<br><br>*Attorneys for Defendants Zydus Pharmaceuticals (USA), Inc. and Cadila Healthcare Ltd.* |

Dear Judge Burke,

I write as counsel, along with Katten, for Sawai Defendants in the above-referenced action. Zydus also joins this motion. Pursuant to the Court's March 29 order,[1] we submit this opening letter brief in support of our request to strike Astellas' expert opinions on two issues (1) secondary considerations of non-obviousness ("SC") and (2) other issues relating to validity[2] because Plaintiffs ("Astellas") failed to provide adequate notice of the scope of these contentions before it served 400+ pages of opinions in four rebuttal expert reports six weeks ago.[3]

**A. Astellas Should Be Precluded From Relying on SC in this Case At All.**

The SC issue is a continuation of the previous dispute addressed by the Court in October (D.I. 346), but more egregious because it is a repeat offense, done without obtaining leave of Court as required by the Court's Order, and more prejudicial because we have less time to seek relief to remediate the conduct and the significant prejudice Astellas' actions have caused Defendants. As already detailed in this Court's ruling (D.I. 346), Astellas' rog. responses were "just not the way the discovery process is supposed to work." (D.I. 346, ¶4). The Court found Astellas' behavior sufficiently egregious to raise the potential sanction of attorneys' fees. (*Id.*, ¶7).

Critically, the Court's order specifically limited Astellas' and its experts' SC theories and evidence to the content of its supplemental rog. response, stating: "in making its [SC] case at trial, Plaintiffs and their experts may rely on any evidence/argument fairly raised in the [3d] Supplement. However, absent further order of the Court, Plaintiffs' reliance on [SC] is limited to the content of the [3d] Supplement." (*Id.* ¶7, §1) (emphasis added).[4] Astellas clearly violated this Order. The blue highlights in the attached Rebuttals demonstrate the content not found in the 3d Supplement, including new details, evidence, and theories, such as: (1) the supposed "teaching away" of references other than the '532 patent mentioned in the Supplement;[5] (2) drugs other than Detrol® to show supposed "failure of others;"[6] (3) supposed "praise by others" beyond the three awards

---

[1] We first raised these issues with Astellas on March 15, 2019 (Ex. DD: 5), but they delayed our first meet-and-confer until March 22, 2019 (Ex. DD: 1). Exhibits A-GG referenced herein are set forth in the Declaration of Martin Masar, Esq. filed contemporaneously with this letter.

[2] There are four patents still being asserted in this case - two patents concern mirabegron polymorphs ("PMs") and two concern methods of treating ("MOTs") overactive bladder ("OAB") with mirabegron. Defendants challenged the validity of all four patents on a number of issues including because of obviousness and obviousness-type double patenting ("OTDP"), as well as improper inventorship on the PM patents.

[3] These reports of Drs. Myerson, Nitti, Michel, and Vellturo (collectively, "the Rebuttals") are attached as Exs. A-D, respectively. The portions of these Rebuttals that Defs. seek to strike are highlighted in those exhibits for ease of reference. The Rebuttals were provided in response to Defs.' opening invalidity expert reports by Drs. Cima, Chancellor, and Eckhardt (Exs. E-G, respectively; collectively, "the Openings").

[4] The Court's Order limited Astellas to its 2d Supp. *See id.* However, at Astellas' request, Defs. agreed to allow it to rely on its 3d Supp., which only clarified language and added a few of Defs.' own documents to one contention.

[5] *Compare* Ex. H: 30 *with* Ex. C: ¶¶190-194.

[6] *Compare* Ex. H: 30 *with* Ex. B: ¶¶8, 62, 83-84, 118, 123, 127-129; Ex. C: ¶¶12-15, 21, 23, 66, 71, 96-99, 195-201, 231, 333.

1

explicitly cited in the Supplement;[7] (4) different bases for the supposed "commercial success" of Myrbetriq®;[8] (5) post-patent filing data (*e.g.*, clinical trials) to show mirabegron met a supposed "long-felt but unmet need;"[9] and (6) any previously undisclosed "unexpected results."[10] Further, Astellas never disclosed it was contending the PM patents met a supposed "long-felt, but unmet need" in its Supplement, but the Myerson Rebuttal includes this totally new theory.[11] Finally, Astellas relied on thousands of pages of previously undisclosed documents, many of which were its own internal documents.[12,13]

Astellas' attempt to rely on extensive content not previously disclosed is particularly prejudicial because of its belated disclosure. Astellas' opinions were first disclosed nearly three years into the litigation, well after fact discovery closed, in Rebuttals. Defendants have already been prejudiced by, *inter alia*, (a) not being able to conduct proper fact discovery on these new theories, arguments, and evidence and (b) having to prepare this motion instead of focusing on our reply reports on the expected SC topics from the Supplement. Astellas' actions will continue to prejudice Defendants by (a) disrupting the expert deposition period, (b) possibly requiring supplemental expert reports, and (c) potentially disrupting the trial schedule.

All of the *Pennypack* factors favor exclusion here. *First*, as the Court has found (D.I. 346 at ¶3), secondary considerations are an important part of this case. Defendants were entitled to know

---

[7] *Compare* Ex. H: 28 *with* Ex. B: ¶134.

[8] *Compare* Ex. H: 26-28 *with* Ex. D: ¶¶8, 9, 10, 15-23, 25, 27, 30, 36, 39, 45-50, 52-55, 60-62; Ex. B: ¶¶56-87, 124-125; Ex. C: ¶¶234, 333.

[9] *Compare* Ex. H: 28-29 *with* Ex. B: ¶133; Ex. C: ¶¶64-86, 233, 333 (and cited ¶¶).

[10] *Compare* Ex. H: 31-32 *with* Ex. C: ¶¶67-71, 232, 333; Ex. B: ¶130.

[11] *Compare* Ex. H: 28-29 *with* Ex. A: ¶215.

[12] *Compare* Ex. H: 18-33 *with e.g*., blue-highlighted references in Ex. A: ¶¶214, 215-220; Ex. B: ¶¶96, 98-115, 123-126, 134-136; Ex. C: ¶¶67-71, 233; Ex. D: §II, ¶¶47-50, 54 (and references in ¶¶ cited therein). To make matters more difficult, the SC opinions and the supporting evidence in the Rebuttals are not self-contained. Rather, these SC opinions refer to various other sections and/or other Rebuttals (and even opening "infringement" expert reports), which then often refer to other sections, and so on. *See, e.g.*, Ex. B: ¶193, citing §§X.D-I, which in turn cites other ¶¶/§§ (*e.g.*, ¶123, citing ¶85, which cites ¶80, and both ¶¶80, 85 citing mostly documents not properly disclosed in the 3d Supp.), and/or other reports (*e.g.*, ¶123, citing Op. Rept. ¶49 and citing ¶¶62, 118, each citing ¶¶ in Ex. C). Other Rebuttals simply state "[f]or all the reasons I have set out above" in the previous 90 pages to support a cursory SC opinion. *See, e.g.*, Ex. C: ¶232. In fact, Dr. Nitti incorporated his entire obviousness analysis into his opinion on supposed "unexpected results" of the MOT patents. Ex. B: ¶130, citing §X.J. Whether intentional or not, Astellas' "Russian-nesting-doll" approach makes it difficult to discern exactly what its experts are relying on to support their opinions. Defs. should not have to guess or waste deposition time determining what is actually relied upon to support Astellas' contentions at this point in the case.

[13] Drs. Vellturro and Nitti also relied on Astellas documents whose Bates Numbers were not specifically cited or discussed in the 3d Supp., but were arguably "disclosed" by their inclusion in either a 4,000- or 500,000-page citation as part of string cites under "Rule 33(d)." Ex. H: 27 (citing A_M00084965-89121); 32 (citing its entire NDA, A_M00089283-00662021). Astellas essentially put the burden on Defs. to comb through over 500,000 pages and guess at what it was actually contending. Rule 33(d) requires disclosure with particularity, not broad reference to thousands of pages.

2

what issues to address, research, and take discovery on, and also have time to respond. *Second*, clearly Defendants have been surprised and prejudiced for the reasons stated above. *Third*, disruption of the trial schedule will occur if proper fact and expert discovery on these new issues is allowed. *Fourth*, at this point in the schedule, there is no opportunity to cure. During the October 2018 dispute, Astellas argued there was "ample time to cure" any prejudice because expert replies were not due for 6 months and trial was 8 months away. (D.I. 343 at 3). Not so today. Trial is 4.5 months away. There is no room to extend the schedule to cure Astellas' knowing transgressions. Indeed, we have 9 expert depositions and pretrial filings leading into trial. *Fifth*, Astellas has never provided any justification, especially for its addition of new content in light of the previous SC Order. *Sixth*, as described throughout this letter, Astellas' repeated violations are sufficient to find bad faith (or at least willfulness) warranting exclusion.

At this point, **the entire issue of SC** should be excluded from this case because: (a) Astellas disregarded the lesser sanctions in the Court's Order, even with the potential threat of attorneys' fees;[14] (b) Astellas has demonstrated a pattern of discovery abuses as shown by Sawai's previous successful motions (D.I. 218, 346) and the conduct described herein; and, (c) while important, striking this SC issue will not leave Astellas' defenseless against Defendants' invalidity challenges. Indeed, Judge Sleet struck the SC issue from an ANDA case to remedy similar discovery abuses by those plaintiffs. *See In re Armodafinil Pat. Litig.*, No. 1:10-md-02200-GMS (D. Del.) at D.I. 222 (11/28/11 hearing): *e.g.*, 10-11, 23-24 ("THE COURT: I am precluding secondary considerations, period."); 225 (12/7/11 order); and 293 (6/26/12, denying rehearing) (Exs. EE-GG).[15]

### B. Astellas' New, Unexpected Validity Theories and Evidence in Its Rebuttals Not Substantiated During Fact Discovery Should Be Stricken.

The second issue concerns separate augmentations of Astellas' contentions on the asserted patents' validity, relevant prior art, and inventorship, which were not disclosed (or were contradicted) during discovery. These additions are equally, if not more, prejudicial than those discussed above.

Defendants served detailed initial invalidity contentions ("ICs") on the four remaining Asserted Patents over 18 months ago. Defendants then actively sought Astellas' contentions regarding validity through rogs. served in September 2017 and 30(b)(6) depositions during summer 2018. As with SC, Astellas provided bare-bones responses, refused to substantially supplement despite repeated requests, and inadequately prepared and/or improperly limited its corporate witnesses on these topics. Similarly, we sought the full story of how the PM "inventions" were "invented" (*i.e.*, conceived of and reduced to practice). Yet during fact discovery, Astellas had only identified certain named "inventors" and only four documents as relevant to this issue. All told, Astellas provided less than 4 pages of substantive response, identified a handful of documents, and prepared sparing corporate testimony on these topics.

---

[14] *See, e.g., Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719-21 (3d Cir. 1997) (affirming exclusion of expert testimony based on pltf.'s failure to comply with relevant pretrial discovery orders, stating "this is clearly a case that involves flagrant disregard of a court order ….").

[15] At a minimum, if the Court is not inclined to strike SC completely, the portions of the Rebuttals that raise new theories, arguments, and evidence beyond the 3d Supp. should be stricken (*see* blue highlights in Exs. A-D). Under the Scheduling Order (D.I. 25, ¶6(b)), Defs. are entitled to expert replies on SC, which are now due April 3.

3

But then, Astellas' February 2019 Rebuttals surprised Defendants with over 400 pages of expert opinions citing thousands of pages of new evidence, many of which were Astellas documents in its possession from day one.[16] Detailed below are two particularly egregious examples of Astellas' unexpected validity theories that are among the most prejudicial to Defendants. We respectfully request that the Court (a) strike the portions of the Rebuttals addressing these two topics; (b) preclude Astellas and its experts from relying on the myriad of documents not previously disclosed as relevant to these issues; and/or (c) allow Defendants to file two reply reports to address other non-stricken new theories in of the Rebuttals.[17]

*Astellas' New "Selection" Theory*:  One new theory that pervades all four of Astellas' experts' reports concerns the supposed need for the "selection" of mirabegron for further development from the prior art as part of the analysis of Defendants' obviousness defenses.[18] However, Astellas first disclosed this novel theory to Defendants in its Rebuttals.

Astellas' failure to disclose this theory is inexcusable as Defendants provided our initial ICs in August 2017[19] and asked for this information in rogs. and 30(b)(6) depositions.[20] Astellas chose to provide bare-bones responses[21] and refused to substantially supplement despite our repeated requests.[22] Further, it inadequately prepared and/or improperly limited its corporate witnesses on related topics.[23] For example, on prior art, Astellas referred generally to the patent file histories, but then stated it "is not aware of … any publication concerning the respective subject matters of

---

[16] Many of these were originally produced in Japanese and only produced in English with the Rebuttals 6 weeks ago.

[17] The Scheduling Order (D.I. 25) does not allow for non-SC replies without leave of Court. Thus, Defs. are seeking leave herein to file replies from Drs. Cima and Chancellor in addition to our letter motions to strike. We also seek to reply further in those two reports to the extent the Court is disinclined to strike all we have requested.

[18] *See, e.g.*, yellow highlights in Ex. A: ¶¶40-58, 88-89, 93, 150, 151, 154, 162, 165-168, 170, 222, 226, 228, 238; Ex. B: ¶¶4, 5, 7, 8, 118, 123, 152, 157, 160, 175; Ex. C: ¶¶ 9-15, 17, 64-86, 185-194, 196-201, 207, 208, 217-220, 225-226, 228, 235, 237-239, 257, 258, 272, 331, 332; Ex. D: ¶¶10, 17, 18, 60-62.

[19] Ex. I: 89-287 (PM); 287-407 (MOT); Ex. J: 8-41 (PM); 42-590 (MOT).

[20] Ex. K: 8 (Rog. 5); 26 (Rog. 15); D.I. 72.  Also, Defs.' 30(b)(6) Notice (Ex. L) had topics about Astellas' knowledge of the prior art (*e.g.*, Topics 12-13, 15).

[21] Ex. K: 8-9 (Resp. to Rog. 5); 26-27 (Resp. to Rog. 15).

[22] Defs. took issue with these non-responses and let Astellas know early and often that these Resps. were deficient. *See, e.g.*, Ex. M: 10-11, 15-16; Ex. N: 1, 3; Ex. O: 3, 5.  Astellas responded with delay, improper objections, and disregard. *See* Ex. P: 3; Ex. Q: 1.

[23] *See, e.g.*, Ex. L: Objs. & Resps. to Topics 12-13, 15. Indeed, Astellas' corporate designee for these Topics (Kellerman) was only prepared to read what was in the patents' file histories onto the record. Ex. R: Kellerman, 248:20-250:3. Again, we did not sit idly by (*see, e.g.*, Ex. S: 1-2, 5; Ex. T: 4 (re: Kellerman, 1st point). While Defs. ultimately agreed to resolve a variety of discovery disputes by foregoing further discovery on these topics in exchange for Astellas dropping other issues, we did not understand this agreement to mean that they had *carte blanche* to raise new facts, theories, and references during expert discovery or that it waived Astellas' duty to supplement its contention rog. responses with theories and evidence it intended to rely upon in this case.

the inventions of the asserted claims … prior to the latest filing date of the respective patents."[24] Regarding our ICs, Astellas simply responded: "Defendants have not identified any prior art reference that anticipates any claim of the [asserted] patents. Defendants have not identified any prior art reference or combination of references that renders any claim of any of the aforesaid patents obvious. Defendants' Joint Invalidity Contentions… are erroneous in their entirety; and Astellas disagrees with Defendants' Joint Invalidity Contentions in their entirety."[25]

Clearly, these "responses" provided no notice of Astellas' intent to rely on a "selection" theory, which has been rejected by the Federal Circuit.[26] We were surprised by Astellas' experts' extensive opinions on such theories without prior notice. Again, Astellas has provided no reason for its failure to disclose this theory earlier in the case. If it had, Defendants would have been able to take additional third party discovery, retained other experts, or at the very least, addressed these arguments in our Openings. At this juncture, we are close to trial and have limited time for replies, leaving no real possibility for curing Astellas' untimely disclosure without disrupting the trial schedule. Given Astellas' similar tactics on SC discovery, this withholding was likely willful and not done inadvertently. Thus, all of the *Pennypack* factors favor striking Astellas' "selection" theory.

*Astellas' Re-Writing of PM "Inventorship" Story:* In his Rebuttal, Dr. Myerson interpreted previously uncited internal Astellas' documents in a <u>materially new</u> way that is not supported by Astellas' "inventor" testimony.[27] Indeed, Dr. Myerson tells a very different story than the one "disclosed" in Astellas' rog. responses or any of its inventors' or corporate representatives' testimony;[28] the latter seemingly did not even review the new documents in the Myerson Rebuttal as part of their preparation.

In April 2017, Defendants sought a description of "the circumstances of the conception and reduction to practice of each claim of the Patents-in-Suit," "the contribution of each named inventor to the alleged" inventions, and "the identity of all documents relevant to the alleged conception and/or reduction to practice."[29] Last summer, Defendants explored PM inventorship by deposing the 6 available named inventors and an additional corporate representative. Again, Astellas chose to provide bare-bones responses,[30] refused to substantially supplement despite our repeated requests,[31] and inadequately prepared or limited its witnesses on these topics.[32]

By the close of fact discovery, Astellas' substantive response on inventorship consisted of largely rehashed information from the publicly available PM patents and minimal additional information

---

[24] Ex. K: 8-9 (Resp. to Rog. 5).
[25] Ex. K: 26-27 (Resp. to Rog. 15).
[26] *See, e.g., Anacor Pharm., Inc. v. Iancu*, 889 F.3d 1372, 1384–85 (Fed. Cir. 2018).
[27] Ex. A: §IX.F generally, especially green highlights in ¶¶273-281, 284-289, 293-294, 298, 301, 305, 306.
[28] Defendants' Final ICs (Ex. U: 204-06) and Cima Opening (Ex. E: ¶¶198-206) summarize our understanding of the PM invention story after fact discovery.
[29] Ex. V: 6 (Rog. 1, inventorship); D.I 29.
[30] Ex. V at 8 (initial resp.), 10-11 (1st supp.), 13 (2d supp.).
[31] Defs.: Ex. W: 14-15; Ex. X: 3; Ex. M: 6, 10-11, 15-16; Ex. N: 1, 3; Ex. O: 1-2, 3, 5. Astellas' Resps.: Ex. Y: 7; Ex. AA: 3; Ex. BB: 3; Ex. Q: 1.
[32] *See, e.g.*, Ex. L: Objs./Resps. to Topics 1, 4, 5, 10, 14, 15(b); *see generally*, Ex. R; Ex. S: 1-5; Ex. T: 3-4 (Pts. 1-4), 7; Ex. U: 2, 3 (re: Onda, Awamura, Suzuki), 4 (re: Onda Awamura).

5

about when each of the asserted claims was invented and by whom, citing to only four Astellas documents.[33] Astellas sat silent despite focused and repeated questioning by Defendants on the subject, especially about the role of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[34] Only after discovery was complete did Astellas respond to our requests for further information. But even then, Astellas simply denied its witnesses were unprepared and accused Defendants of failing to provide the witnesses "with any documents to refresh [their] recollection of events that had occurred twenty years ago,"[35] even though it was Astellas who (a) had the duty to prepare its 30(b)(6) witnesses and (b) failed to identify more than a handful of documents in its Rog. Responses.[36]

Defendants were surprised by Dr. Myerson's opinion in his Rebuttal setting forth a new theory of inventorship totally unrelated to the asserted PM patent claims (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). His 20-page opinion cites to over 25 documents when Astellas' Rog. Response was 10 lines citing 4 documents (only one of which is cited in the Rebuttal).[37] Again, Astellas has provided no reason why it did not disclose this "story" earlier in the case. Defendants are left in the same quandary as we face above with respect to the "selection" theory. At this time, no opportunity for curing the prejudice exists before trial. Also, Astellas' delayed disclosure of such a dramatic change in a story that was known to Astellas for 20 years likely has no good faith explanation. Thus, all of the *Pennypack* factors favor striking Dr. Myerson's revised version of the PM inventorship story.

\* \* \*

Astellas' repeated actions have demonstrably prejudiced Defendants in ways that are not easily cured. Accordingly, Defendants respectfully request that the Court prohibit Astellas from relying on SC at trial. Further, Astellas' untimely "selection" theory and revised PM inventorship story should be stricken, along with the new documents relied upon in the Rebuttals. Defendants also request that they be permitted to serve expert reply reports responding to Astellas' other new validity theories, arguments and evidence disclosed for the first time in the Rebuttals. Finally, Defendants respectfully request any further sanctions the Court deems appropriate to remedy Astellas' transgressions, including attorneys' fees.

---

[33] Ex. W: 13 (2d Supp.) (citing A_M05002851-52; 00080643, 05000001, and 000024491-547).
[34] Ex. E: ¶¶200-204; *see also* Ex. R: Awamura Dep. Tr., 243:21-245:5; 255:2-22; 257:2-274:33; Suzuki Dep. Tr., 91:8-92:19; 158:20-174:9; 322:12-325:20; Kellerman Dep. Tr., 68:14-79:14; 104:17-109:20; 287:8-13.
[35] Ex. CC: 2-3; *see also* 4-6; 10-11.
[36] Also, three of the four cited documents were actually shown to Astellas' witnesses. *See* Ex. R: Onda Dep. Tr., 91:14-107:7; Sakamato Dep. Tr., 225:3-249:9; Suzuki Dep. Tr., 72:4-82:12. The content of the fourth was discussed as well. *See* Ex. R: Suzuki Dep. Tr., 90:18-96:16.
[37] Ex. A: ¶¶272-307.

6

                                                          Respectfully submitted,

                                                          */s/ Dominick T. Gattuso*

                                                          Dominick Gattuso (No. 3630)

cc:    Clerk of the Court (by hand delivery)
        All Counsel of Record (by CM/ECF and Email)