# Exhibit R Remains Under Seal In Its Entirety

# Exhibit S

# Duane Morris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

*FIRM and AFFILIATE OFFICES*

NEELAABH SHANKAR, PH.D.
DIRECT DIAL: +1 857 488 4296
PERSONAL FAX: +1 857 401 3049
*E-MAIL:* nshankar@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

June 15, 2018

<u>**VIA EMAIL**</u>

Simon Roberts
Fitzpatrick, Cella, Harper & Scinto
1290 Avenue of the Americas
New York, NY 10104-3800

      Re:    *<u>Astellas Pharma Inc. et. al. v. Prinston Pharmaceutical Inc., et. al., C.A. No. 16-905-JFB-CJB (consolidated)</u>*

Dear Simon:

      I write on behalf of all Defendants regarding Plaintiffs' Responses and Objections to Defendants' Joint First Notice of Rule 30(b)(6) Deposition of Astellas Plaintiffs ("Astellas") dated June 1, 2018. Please let us know when you would be available to further discuss these issues, we are available to discuss any time between June 18, 2018 and June 19, 2018.

      I.    <u>**Astellas has refused to, or has not made clear whether it will, offer witnesses regarding certain topics.**</u>

      Astellas has not stated with sufficient specificity whether it intends to provide any witness to testify on Topics 10(2–5), 15(d), and 15(f–j). The information sought by Topics 10(2–5) is relevant and discoverable by Defendants. For instance, information about persons involved in conception and reduction to practice or acts of diligence related to the alleged inventions described or claimed in the Asserted Patents is relevant to the validity of the Asserted Patents, is not vaguely described, does not require Astellas to make any legal conclusions, or prematurely provide testimony. For Topic 15, Astellas agrees to provide a deponent for "factual matters concerning the contents of the publicly available prosecution file histories for each of the '117, '049, '474, and '872 patents, and the applications from which these patents issued." But Astellas is silent (or ambiguous) about the non-public information requested by Topic 15. For example, Astellas has not indicated whether or not it intends to provide a deponent regarding non-public information on interviews with the USPTO (Topic 15(d)); identity of person, committees or groups involved in patent prosecution (Topic 15(f)); determination of inventorship (Topic 15(g)); decisions to file

DuaneMorris

June 15, 2018
Page 2

supplemental examination of the '532 patent and a reissue examination for the '872 patent (Topic 15(h)). As a result, it is unclear whether Astellas intends to produce deponents to testify about this information. Please confirm that Astellas will provide witnesses prepared to testify on the full scope of Topics 10 and 15, including all sub-parts.

For Topic 12, Astellas has not indicated whether or not it intends to provide a deponent to testify regarding the first license or license offer, the first agreement, contract, partnership, arrangement, or discussion for commercialization of any polymorph of Mirabegron and the Mirabegron products incorporating the subject matter of any claim of the Asserted Patents. None of these sub-topics are vaguely defined, irrelevant, require legal conclusions or expert opinion, or seek privileged information. As such, the information sought by Topic 12 is discoverable. Please confirm that Astellas will designate a deponent to testify on the full scope of Topic 12.

For Topic 6(f), Astellas has not stated whether it will provide a deponent to testify on why other crystal forms were not selected for use in Myrbetriq®. For Topic 7, Astellas has stated that it will provide a deponent to testify "as to non-privileged factual matters concerning the properties considered and the selection of the crystal form of mirabegron used in Myrbetriq®." Topic 7 also seeks information regarding the research, formulation, development, testing, and selection of Myrbetriq®, including (a) the dosage form; (b) the formula; (c) the ingredients and excipients; (d) the physical characteristics; and (e) the process of manufacture. Astellas has not provided any specific information on why the information sought in Topic 7 is duplicative of Topic Nos. 3, 4, 5, and 6. Topic 3, unlike Topic 7, is related to Mirabegron API and the Mirabegron products that are the subject of NDA No. 202611 and does not seek information regarding, e.g., the dosage form, the formula, ingredients and excipients of Myrbetriq®. Similarly, Topics 4, 5, and 6 have a different scope than Topic 7. Please confirm that Astellas will provide a witness prepared to testify on the full scope of Topics 6(f) and 7, including all their sub-parts.

Topics 17, 18, and 19 seek specific information regarding factual bases supporting Plaintiffs' allegations of the existence of any secondary considerations of non-obviousness on which Plaintiffs intend to rely in this litigation; the nexus between the secondary consideration and the subject matter of the Asserted Patents; and the utility, advantage, superiority, or benefit of the subject matter disclosed or claimed in the Asserted Patents as compared to those disclosed or claimed in U.S. Patent No. 6,346,532. As Astellas is aware, Defendants are entitled to know Astellas' position on secondary considerations and evaluate/analyze their factual validity as this information is directly relevant to validity of the Asserted Patents. Please confirm that Astellas will provide at least one witness prepared to testify on the full scope of Topics 17, 18, and 19.

Astellas has not stated with sufficient clarity whether it intends to provide a witness to testify regarding the full scope of Topic 20. For example, Topic 20 seeks information about communications with FDA or complaints made to FDA. It is not clear from Astellas' response whether it agrees to provide a deponent to testify about communications or complaints made to the FDA concerning Myrbetriq®. Additionally, it not clear whether Astellas is withholding categories of information, particularly, communications with FDA based upon its vague and ambiguous objections. Please confirm that Astellas will provide a witness prepared to testify regarding the full scope of Topic 20.

DuaneMorris

June 15, 2018
Page 3

For Topics 23 and 26, Astellas has failed to designate any witness and not provided any reasonable explanation. For Topic 23, Defendants seek factual information relevant to claims of the Asserted Patents that Plaintiffs allege are infringed by Defendants and documents supporting the infringement allegations. Similarly, for Topic 26, Defendants seek factual information related to how Myrbetriq® and its use are covered by the claims of the Asserted Patents. With respect to Topics 29 and 36, Astellas states that it does not believe that a witness is necessary with respect to the Topics because "[a]s presently advised, [it] is not aware of any off-label use of Myrbetriq®" and "Plaintiffs are currently unaware of any valuation being assigned to any of the '117, '049, '474, and '872 patents," respectively. Please either confirm that Astellas will produce at least one witness on Topics 23, 26, 29 and 36.

Regarding Topic 39, Astellas has not provided any specific reason describing why it will not designate any witness. The topic is specifically defined and is clearly relevant to the claims and defenses of this litigation. It pertains to efforts by Astellas to evaluate generic competition and its efforts, if any, to prevent, delay, and/or minimize such generic competition. Astellas has not denied that it engaged in such activity and, therefore, it is not clear whether Astellas is withholding categories of information based upon its vague and ambiguous objections or it is not involved in the efforts identified by Topic 39. Please confirm that Astellas will provide a witness prepared to testify regarding the full scope of Topic 39 or at least testify that Astellas was not involved in the activities described by the topic.

Astellas has refused to designate a witness on Topic 40, without providing any explanation as to why the topic is vague, irrelevant or disproportional to the needs of this case. The topic, as you are aware, does not seek privileged information. It, among other things, seeks the identity, nature and location of all files, archives, databases that may store or may have formerly stored documents and information responsive to Defendants' requests for production. This information is highly relevant as it provides Defendants with the identity of databases/locations that may be searched in order to identify/locate discoverable information. Furthermore, Defendants have raised numerous issues to Astellas regarding the format of documents produced to Defendants, which are indicative of potential problems with the identity, nature and location of all files, archives, databases that may store or may have formerly stored documents and information responsive to Defendants' requests for production. Also, for Topic 44, Astellas has refused to designate any witness without providing any specific information of how its objections apply. Defendants disagree with Astellas' objection and position that this Topic is not of reasonable scope and emphasize that they are entitled to the information sought in the topic. Please confirm that Astellas will provide at least one witness prepared to testify on the full scope of Topics 40 and 44.

Astellas has also refused to designate any witness on Topic 46 that relates only to "factual basis" for Plaintiffs' contention that they are entitled to injunctive relief and their contention that any remedies available at law are inadequate. It is unclear how this topic is improperly requesting litigation contentions, are overly broad, and seeking legal conclusion or expert opinions. It is also not clear whether Plaintiffs are withholding information regarding this topic by asserting irrelevant and ambiguous objections. As such, Defendants are entitled to the factual basis for Plaintiffs'

DuaneMorris

June 15, 2018
Page 4

contentions and expect Astellas to designate a witness on the full scope of this topic. Please confirm that this is the case.

**II.**     **Astellas has unduly narrowed, or called into question, the scope of several topics.**

Topic 1 seeks deposition testimony regarding the inventions claimed in the Asserted Patents. In response, Astellas has vaguely offered to provide a witness to testify on "the Topics below;" Topics 5, 10, 14, and 16; and severely restricted the scope of testimony sought by Topic 1. Defendants are unable to ascertain which topics are covered when Astellas states: "the Topics below" and whether the scope of "the Topics below" matches the scope of Topic 1. Additionally, Defendants are unable to understand how deposition testimony on Topics 5, 10, 14, and 16 matches the scope of Topic 1. As such, Astellas has restricted the scope of deposition testimony on Topics 5, 10, 14 and 16 to only the method of preparing Mirabegron API that is subject of NDA No. 202611; conception and reduction to practice; and identity of persons involved reduction to practice of the Asserted Patents. Defendants are entitled to discovery on this Topic and expect Astellas to designate a witness on the full scope of this topic. Please confirm that this is the case.

For Topic 2, Defendants seek a deponent not just regarding "policies and procedures for documenting new inventions as of the time of the applications were filed" but also on policies and procedures for maintaining records on potential new inventions. Please confirm that Astellas will provide witnesses prepared to testify on the full scope of Topic 2.

Topic 3 seeks information on properties of Mirabegron API and the Mirabegron products, but, Astellas has—without providing any reason—limited the scope of Topic 3 to properties that are related only to secondary considerations. This answer is not fully responsive. If Astellas has any knowledge about properties of Mirabegron API and the Mirabegron products—including research and development, scientific tests, analyses, studies, experiment, or evaluations—Defendants are entitled to discover it. As you are aware, Judge Burke previously held that Astellas' current and historical knowledge of all forms of any mirabegron API or product is relevant to this litigation. See Dkt. 218. Please confirm that Astellas will provide witnesses to testify regarding the full scope of Topic 3.

For Topics 4, 5, and 6, Astellas cannot, without any reason, change the scope of requested testimony. For instance, in response to Topic 4, Astellas has changed the scope to cover only Mirabegron API and the Mirabegron product that are the subject of NDA No. 202611 when the Topic seeks testimony regarding "properties of any crystal form of Mirabegron API including any allegedly claimed in the Asserted Patents." Again, this topic has already been deemed relevant by the Court and Plaintiffs' objections were overruled. See Dkt. 218. Also, Topic 5 seeks information on method for preparing Mirabegron API and any Mirabegron products allegedly disclosed or claimed in the Asserted Patents, but, Astellas only intends to provide deponent(s) to testify regarding the method for preparing Mirabegron API that is the subject of NDA No. 202611. Again, for Topic 6, Astellas intends to provide a deponent regarding "the properties considered and the selection of the crystal form of mirabegron used in Myrbetriq®" when the topic seeks information on (a) dosage form; (b) the formula; (c) the ingredients and excipients; (d) the physical

DuaneMorris

June 15, 2018
Page 5

characteristics, including the chemical and physical properties; (e) the process of manufacture; and (f) criteria and reasons why other crystal forms were not selected for use in Myrbetriq®. As such, Defendants expect Astellas to provide at least one witness to testify on the full scope of Topics 4, 5, and 6.

The scopes of Topics 6, 7, and 8 are different, but Astellas' response for all three of these topics is that it will provide "designate one or more witnesses to testify as to non-privileged factual matters concerning the properties considered and the selection of the crystal form of mirabegron used in Myrbetriq®." Topic 6 seeks deposition testimony regarding the crystal form used in Myrbetriq®, Topic 7 seeks testimony on Myrbetriq®, and Topic 8 seeks testimony regarding identity of persons and committees involved in research and development of Myrbetriq®. It is unclear, from Astellas' response to Topic 8, how properties considered and the selection of the crystal form of mirabegron used in Myrbetriq® is related to the identity of persons and committees sought in Topic 8. Kindly explain these discrepancies and confirm that Astellas' deponent(s) for these three topics will be prepared to testify about the information sought in each Topic.

Astellas has also changed the scope of Topics 7 and 8. Topic 7 seeks information on the research, formulation, development, testing, and selection of Myrbetriq® and Topic 8 seeks information regarding the identity of individuals having a role in research, formulation, development, testing, and selection of Myrbetriq®. Surprisingly, despite the clearly different scope of these two topics, Astellas intends to provide "witnesses to testify as to non-privileged factual matters concerning the properties considered and the selection of the crystal form of mirabegron used in Myrbetriq®" for both those topics. For Topic 9, Defendants seek identity of persons/committees involved in making decisions regarding studies on Mirabegron products for treatment of various indications. In response, Astellas intends to provide witness on the identity of persons who were involved in "the conception and reduction to practice of the inventions recited in the asserted claims of the '474 and '872 patents." There is a remarkable temporal difference between studies conducted for treatment of certain indications (which in many cases are done after the product is developed) and conception and reduction of practice (which usually takes place before the product is developed). Defendants expect Astellas to designate at least one witness to testify on the full scope of Topics 7, 8, and 9. Please confirm that will be the case.

Astellas' answer to Topic 11 is also not fully responsive to the information sought by the topic and is unclear. Topic 11 seeks testimony on Astellas' current knowledge on Mirabegron compounds and pharmaceutical compositions comprising a Mirabegron pharmaceutical ingredient(s), regardless of whether the compound, composition, or ingredient was approved by the FDA, commercialized, or sold. In response, Astellas agrees only to provide deponents to testify regarding "the research and development and analysis" of Mirabegron free base(s) known to Astellas. Please confirm that Astellas will provide witnesses prepared to testify regarding all of the specific matters identified in the Topic 11.

Astellas has only agreed to provide testimony regarding "Astellas' current awareness of any publications of mirabegron, to the extent such exists prior to November 7, 2002" related to Topic 13. Please confirm that Astellas is not limiting testimony to only publications but will also

DuaneMorris

June 15, 2018
Page 6

provide testimony on any searches or other investigation Astellas undertook regarding Mirabegron as sought by Topic 13.

For Topic 14, please confirm that Astellas is not limiting testimony to only identities of the persons involved in reduction to practice but will also provide communications between those identified persons concerning the Asserted Patents. Plaintiffs are entitled to all communications related to the Asserted Patents, between the persons identified in Topic 14. Please confirm that Astellas will provide a witness to testify on such communications.

Topic 16 seeks deposition testimony regarding the specifications of the Asserted Patents. It is not clear why Astellas finds this topic vague, overly broad, and seeking legal conclusions or expert opinions. Astellas' response states that it will provide at least one deponent "to testify as to non-privileged factual matters concerning the specifications of the '117, '049, '474, and '872 patents, Astellas research and development documents that underlie such texts, figures, tables, data, and examples." Confirm that Plaintiffs will provide a witness to testify to the full scope of Topic 16.

For Topic 25, Astellas has improperly limited the scope of the Topic without a valid specific objection. Please confirm that Astellas will not limit the scope to "Astellas' decision to market Myrbetriq® upon FDA approval" and provide at least one witness to testify on Astellas' decision to develop Myrbetriq®, including all internal discussions, discussions with third parties, documents relating to development efforts, market studies, and due diligence efforts. This Topic is relevant to at least Astellas' assertion of secondary considerations of non-obviousness.

Topic 27 seeks communications between Plaintiffs and inventors regarding the subject matter of the Asserted Patents, their ownership, inventorship, and assignment. In response, Astellas intends to provide a witness regarding factual matters that are reflected in the assignment documents executed by the inventors of the '117, '049, '474, and '872 patents in connection with their assignment of the '117, '049, '474, and '872 patents to Astellas. This response is confusing and drastically limits the scope of Topic 27. Defendants are entitled to discovery into all non-privileged communications between the inventors and Plaintiffs regarding the subject matter of Topic 27 and expect Astellas to designate at least one witness on the full scope of Topic 27.

Topic 28 is seeking testimony on all communications, contacts, and/or knowledge between plaintiffs (or any agent of the plaintiff) and the FDA regarding NDA No. 202611 or any ANDA that references NDA No. 202611. Astellas has limited the scope of Topic 28 drastically and wishes to provide testimony only on non-privileged factual matters that are reflected in the contents of NDA No. 202611. Defendants expect Astellas to provide witnesses on the full scope of Topic 28. Please confirm that to be the case.

Regarding Topic 33, Astellas asserts that the testimony sought is duplicative of Topic No. 24. This is incorrect. While there might be some overlap between the two topics, Topic 33 is related to all licenses, offers for license, development agreements, sales agreements, advertising agreements, and marketing agreements relating to Myrbetriq® and/or the Asserted Patents whereas Topic 24 is specifically limited to licenses, licensing programs, or arrangements between AP, AICL, and/or APGD. Also, Astellas has unreasonably limited the scope of Topic 33 to matters

DuaneMorris

June 15, 2018
Page 7

that are reflected in the contents of any license agreement to the '117, '049, '474, and '872 patents when the topic seeks deposition testimony on, not just the license agreement, but also on offers for license, development agreements, sales agreements, advertising agreements, and marketing agreements. Please confirm that Astellas will provide a witness to testify on the full scope of Topic 33.

Topics 41 and 42 seek information that is relevant to the validity of the Asserted Patents. Defendants are entitled to and expect an Astellas witness to testify on the full scope of the subject matter of Topics 41 and 42, not just representative promotional materials, advertisements, or other marketing material.

Topic 43 seeks information regarding all clinical trials, including pilot trials, conducted by, on behalf of, or at the direction of Plaintiffs involving the use of Mirabegron. However, Astellas has offered to provide witnesses to testify on "non-privileged factual matters that are reflected in the contents of NDA No. 202611." This answer is not fully responsive to the information sought by the Topic. If Astellas has any knowledge about unpublished results and/or data from clinical trials, or analysis of the results, publications or posters or presentations regarding the clinical trials, Plaintiffs are entitled to discover it. Please confirm that Astellas will provide witnesses to testify regarding the full scope of Topic 43.

Astellas has failed to provide any explanation why, in its view, Topic 45 is ambiguous and the information sought is not relevant or proportional to the needs of the case. Astellas contends that the topic covers multiple subject matters and, therefore, lacks reasonable particularity. It is not clear why Astellas finds the topic confusing; the topic is intended to identify persons involved in certain listed and clearly identified categories of activities related to Myrbetriq®. Defendants are entitled to obtain this information and request Astellas to confirm that it will provide a deponent to testify on the full scope of Topic 45.

This correspondence should not be taken as Defendants' complete position on all Topics, responses, or objections, and Defendants reserve the right to further discuss any Topic, response, or objection not specifically addressed in this letter.

Very truly yours,

Neelaabh Shankar, Ph.D.

NS

Exhibits T - W Remain Under Seal

In Their Entirety

# Exhibit X



North America   Europe   Asia

35 W. Wacker Drive
Chicago, IL 60601
T +1 312 558 5600
F +1 312 558 5700

**BRYCE A. COOPER**
bcooper@winston.com

September 27, 2017

<u>**VIA ELECTRONIC MAIL**</u>

Robert L. Baechtold
John D. Murnane
Simon D. Roberts
Christopher P. Borello
FITZPATRICK, CELLA, HARPER &SCINTO
1290 Avenue of the Americas
New York, NY 10104-3800
(212) 218-2100
rbaechtold@fchs.com
jmurnane@fchs.com
sroberts@fchs.com
cborello@fchs.com

Re:   *Astellas Pharma Inc., et al. v. Actavis Elizabeth LLC, et al.,* C.A. No. 16-905
      (SLR) (D. Del.) Consolidated

Dear Counsel:

We write on behalf of Defendants regarding certain deficiencies in Plaintiffs'
Responses and Objections to Defendants' First Joint Requests for the Production of Documents
and Things (Nos. 1-24) ("RFP Responses") and in Plaintiffs' Responses and Objections to
Defendants' First Joint Set of Interrogatories (Nos. 1-3) ("Interrogatory Responses"), served
respectively on each Defendant. Although Defendants address certain deficiencies in this letter,
the fact that Defendants do not specifically address every deficiency should not be taken as a
tacit admission that any of Plaintiffs' RFP Responses or Interrogatory Responses is proper.

1.   <u>**Deficiencies in Plaintiffs' RFP Responses**</u>

A.   **Failure to Provide Search Terms**

To date, Plaintiffs have failed to identify any search terms to any of the
Defendants. Pursuant to Del. Default Standard for Discovery ¶5(b), "[i]f the producing party
elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms
to the requesting party." Plaintiffs' failure to disclose search terms is either a violation of ¶5(b)
or an indication that Plaintiffs are not using search terms to locate responsive ESI. If Plaintiffs
are using search terms to locate ESI, please comply immediately with ¶5(b) and disclose those
terms to Defendants. If Plaintiffs are not using search terms to locate ESI, please explain
Plaintiffs' methodology for locating responsive ESI. Your failure to adequately state how

**WINSTON & STRAWN**

September 27, 2017<br/>Page 2

Plaintiffs are handling ESI collection is prejudicing Defendants' ability to evaluate such methods and challenge them, if necessary.

### B.   General Response No. 6

Plaintiffs' General Response No. 6 states that "[t]o the extent Plaintiffs agree to produce documents, Plaintiffs will only produce documents concerning the '532 patent to those Defendants who have challenged the validity of that patent." This is improper. Plaintiffs have agreed to provide discovery related to the '532 patent to all Defendants provided it does not relate "solely to the validity, enforceability or infringement of the '532 patent." *See* Stipulated Protective Order at ¶ 10; Memorandum Order (Dkt. No. 65) at 2. Further, discovery concerning the '532 patent is relevant to the claims and defenses of all Defendants because the '532 patent is prior art to the '117, '049, '474 and '872 patents and because the subject matter of the '532 patent overlaps with the subject matter of the '117, '049, '474 and '872 patents. The state of the art at the time of the invention of the '532 patent is highly relevant to the validity of the claims of the '117, '049, '474 and '872 patents and to the state of the art at the time of those patents. Additionally, documents concerning the development of the subject matter described in the '532 patent and the prosecution of the '532 patent are similarly relevant to the claims and defenses of all Defendants. Please withdraw General Response No. 6 and confirm that Plaintiffs will produce documents concerning the '532 patent to all Defendants unless they relate "solely to the validity, enforceability or infringement of the '532 patent." Producing documents concerning the '532 patent to all Defendants in this case will not be unduly burdensome because these documents are being produced to the Actavis and Sawai Defendants in this case.

### C.   General Objection No. 4

General Objection No. 4 limits the scope of discovery that Plaintiffs will provide to "discovery related to asserted prior art, the conception and reduction to practice of the inventions claimed in any Patent-in-Suit, and/or limited to a term of six (6) years before the filing of the first complaint in the Current Litigation, *i.e.*, October 6, 2010." Plaintiffs' October 6, 2010 discovery cut-off improperly limits Defendants' ability to obtain highly relevant discovery in this case.

For example, Myrbetriq® is purported to be a commercial embodiment of the patents-in-suit. *See Astellas Pharma Inc., et al. v. Sandoz Inc.,* C.A. No. 16-952 (SLR) (D. Del.) (D.I. 1) (Complaint), ¶ 27 ("The FDA approved NDA No. 202611 on June 28, 2012 for both the 25 mg and 50 mg extended-release Myrbetriq® tablets. In addition to the '117, '049, '474 and '872 patents, the Orange Book for NDA No. 202611 also lists, *inter alia*, U.S. Patent No. 6,346,532 ('the '532 patent') covering the mirabegron compound and pharmaceutical compositions containing mirabegron."). Myrbetriq® was FDA approved on June 28, 2012 and a significant amount of research and development relating Myrbetriq® was performed prior to Plaintiffs' proposed October 6, 2010 discovery cut-off date. In fact, the FDA's website includes information for NDA 202611 that dates back to at least 2008. *See* Application Number 202611Orig1s000 at 4-5 ("On February 5, 2008, following submission of phase 3 study protocols for special protocol assessment (SPA) in December 2007, the Division provided the

**WINSTON & STRAWN**

Applicant with Phase 3 protocol review comments which recommended that a 25 mg dose of mirabegron be evaluated ...") (available at https://www.accessdata.fda.gov/drugsatfda_docs/nda/2012/202611Orig1s000SumR.pdf).

      Plaintiffs' unilateral refusal to produce documents from before October 6, 2010 is unreasonable and there is good cause to search for documents and information prior to October 6, 2010. Discovery concerning the research and development of Myrbetriq® is highly relevant to the claims and defenses in this case, including patent invalidity and secondary considerations, and we therefore request that you withdraw General Objection No. 4. At least with respect to discovery relating to asserted prior art or conception and reduction to practice, discovery cannot be limited to a term of 6 years before the filing of the complaint. *See* Del. Default Standard for Discovery, ¶4(e).

### D.    General Objection No. 5

      Plaintiffs improperly object to providing any draft documents in General Objection No. 5. Plaintiffs provide no explanation for this improper limitation on the scope of discoverable information. Further, Plaintiffs have stated that Defendants' refusal to produce drafts is improper and, thus, it is inconsistent of Plaintiffs to demand drafts from Defendants but refuse to produce drafts of their own. Please withdraw Plaintiffs' improper General Objection No. 5.

### E.    General Objection No. 7

      Plaintiffs object to providing documents, communications, and things "available in the public domain" in General Objection No. 7. This is improper because a party must produce documents as they are kept in the ordinary course of business under the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 34 (b)(2)(e). Documents available in the public domain are not a substitute for Plaintiffs' documents as they are kept in the ordinary course of business. For example, FRE 803(6) creates a hearsay objection for the regularly kept records of businesses and this exception does not exist for documents "available in the public domain." Moreover, documents "available in the public domain" may be more difficult to authenticate than Plaintiffs' own documents as they are kept in the ordinary course of business. Please withdraw Plaintiffs' improper General Objection No. 7 or confirm that no documents located during reasonable searches will be withheld on this ground.

### F.    General Objection No. 10

      Plaintiffs object to providing documents "subject to a confidentiality obligation or protective order involving a third party" in General Objection No. 10. This is an improper general objection because it obscures the scope of discovery that Plaintiffs are withholding. The Federal Rules of Civil Procedure require a party to "state whether any responsive materials are being withheld on the basis of an objection." *See* Fed. R. Civ. P. 34 (b)(2)(c). To the extent documents responsive to a specific discovery request are being withheld on the basis of a third party confidentiality obligation, this objection must be raised specifically, Plaintiffs must state that responsive materials are being withheld on the basis of that objection and Plaintiffs must



seek to obtain approval from the third party to produce the documents pursuant to Paragraph 3 of the Stipulated Protective Order.  Please withdraw General Objection No. 10.

### G.    RFP Response No. 6

Request No. 6 seeks documents "relating to any opposition, litigation, reissue, *inter partes* review, reexamination, or other proceeding concerning the validity, enforceability, infringement, or extension of the Patents-in-Suit . . . ."  Plaintiffs object to this Request "to the extent it seeks documents and things already in Defendants' possession or available in the public domain" and only agreed to produce "documents concerning U.S. Patent Nos. 7,342,117 B2, 7,982,049 B2, 8,835,474 B2 and RE44,872 E responsive to this Request" to the non-Actavis and Sawai Defendants.  These objections and response are improper for multiple reasons.

*First*, Plaintiffs' objection to producing documents "already in Defendants' possession or available to the public" is improper and must be withdrawn for the same reasons as described above for General Objection No. 7.  Plaintiffs presumably have comprehensive case files that include all publicly available and confidential filings from any proceeding concerning the validity, enforceability, infringement, or extension of the Patents-in-Suit.  Plaintiffs have identified no proper basis to withhold documents in Plaintiffs' possession, custody, or control as they are kept in the ordinary course of business under the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 34 (b)(2)(e).  It is improper for Plaintiffs to selectively exclude publicly available files from the production of their case files concerning the validity, enforceability, infringement, or extension of the Patents-in-Suit.

*Second*, discovery concerning the validity and enforceability of the '532 patent is relevant to the claims and defenses of all Defendants for the same reasons as described above with respect to General Response No. 6.  The '532 patent is prior art to the '117, '049, '474, and '872 patents.  Statements regarding the subject matter of the '532 patent and the state of the art at the time of the invention of the '532 patent are thus highly relevant to the validity of the '117, '049, '474, and '872 patents and may not contain Plaintiffs' confidential information.  It is improper for Plaintiffs to refuse to provide this discovery to all Defendants, and it will not be unduly burdensome for Plaintiffs to produce to all Defendants the same discovery it is providing to the Actavis and Sawai Defendants in this case.

*Third*, documents "available to the public" may be more difficult to authenticate than Plaintiffs' own documents as they are kept in the ordinary course of business.

Please withdraw your objection to producing documents "already in Defendants' possession or available to the public," and supplement your response to Request No. 6 to confirm that Plaintiffs will search for and produce documents relating to any proceedings concerning the validity, enforceability, infringement, or extension of the '117, '049, '474, '872, and '532 patents to all Defendants.

WINSTON
&STRAWN

G.    **RFP Response No. 7**

Request No. 7 seeks:

(a)    "all laboratory notebooks or other documents relating to or concerning the conception and/or reduction to practice of the alleged invention(s) of the Patents-in-Suit;"

(b)    "all documents relating to any research and/or experimentation conducted in connection with the prosecution of … the Patents-in-Suit issued, whether or not disclosed to the United States Patent and Trademark Office ("PTO") …;"

(c)    "all documents relating to the identity of the individuals who allegedly conceived of and/or reduced to practice or assisted in the reduction to practice of the alleged invention(s) claimed in the Patents-in-Suit;"

(d)    "all documents relating to the date(s) on which such alleged conception and/or reduction to practice occurred;"

(e)    "all inventor disclosure statements that were prepared concerning the alleged invention(s) of the Patents-in-Suit;"

(f)    "all drafts of the documents that were submitted to the PTO in connection with the prosecution of … the Patents-in-Suit … including, but not limited to, any internal correspondence or memoranda;"

(g)    "all internal research reports generated in whole or in part by the Inventors of the Patents-in-Suit, including their representatives … for purposes of preparing or prosecuting the applications from which the Patents-in-Suit issued;"

(h)    "all documents relating to the decision to file and prosecute the … the Patents-in-Suit, including … any internal research reports generated … for purposes of preparing or prosecuting … the Patents-in-Suit … ;" and

(i)    "all documents and/or information that any of the Inventors of the Patents-in- Suit, including their representatives … considered in connection with the development of the alleged invention(s) in the Patents-in-Suit … regardless of whether such documents or information was cited or provided to the PTO."

Plaintiffs' response states that they will search for and produce "documents and things relating to the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit asserted" against each Defendant, and that they have produced "the certified file histories of the Patents-in-Suit" asserted against each Defendant and "the supplemental examination of the '532 patent, and the '029 patent." While Defendants appreciate your efforts to collect some documents and things, Plaintiffs' response is deficient in at least three ways.

*First*, as previously explained, it is improper for Plaintiffs to refuse to provide all Defendants with discovery concerning the '532 patent because this patent is prior art to the other Patents-in-Suit. Moreover, all of the Patents-in-Suit, including the '532 patent, have common inventors and arose from the research and development of the product that was FDA approved as Myrbetriq®. Discovery concerning which aspect of the inventions each inventor worked on, what the scope of each inventor's contribution was, when this work was performed, and when



each invention was in the possession of the inventors is wholly proportionate to the needs of the claims and defenses in this litigation.

*Second*, it is unclear from Plaintiffs' response which categories of documents Plaintiffs are actually agreeing to search for and produce. *See* Fed. R. Civ. P. 34 (b)(2)(c).

*Third*, documents "available to the public" may be more difficult to authenticate than Plaintiffs' own documents as they are kept in the ordinary course of business.

Please supplement your response to Request No. 7 to confirm that Plaintiffs will search for and produce to all Defendants: (a) all laboratory notebooks of the inventors concerning the Patents-in-Suit, including the '532 patent; (b) all documents concerning research and experimentation conducted in connection with the prosecution of the Patents-in-Suit, including the '532 patent; (c) all documents relating to the identity of the individuals who conceived or assisted in the reduction to practice of the alleged inventions claimed in the Patents-in-Suit, including the '532 patent; (d) all document relating to the dates on which the alleged conception and/or reduction to practice occurred; (e) all inventor disclosure statements of the inventors concerning the Patents-in-Suit, including the '532 patent; (f) drafts of documents submitted to the PTO and internal correspondence and memoranda concerning the prosecution of the Patents-in-Suit, including the '532 patent; (g) all research reports of the inventors and their representatives prepared for the prosecution of the Patents-in-Suit, including the '532 patent; (h) all documents relating to the decision to file and prosecute the Patents-in-Suit, including the '532 patent; and (i) documents and information considered by the inventors, including all inventor files, and their collaborators in connection with the development of the alleged inventions of the Patents-in-Suit and the prosecution of the Patents-in-Suit, including the '532 patent. If certain categories of documents do not exist or are not located after a reasonable search, so state in your revised response.

## H.    RFP Response No. 8

Request No. 8 seeks documents and things "concerning the experimental and factual support for all portions of the Patents-in-Suit, including, but not limited to, laboratory notebooks and records corresponding to the Examples, Tables, and Figures in the Patents-in-Suit." Plaintiffs' response states that they will search for and produce "documents and things relating to the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit asserted" against each Defendant, including such relevant non-privileged/non-work product documents and things relating to the Examples, Tables, and Figures in the Patents-in-Suit being asserted against each Defendant, and notes that they have produced "the certified file histories of the Patents-in-Suit asserted" against each Defendant, and "the supplemental examination of the '029 patent." Plaintiffs' response is deficient for at least the following reasons.

*First*, as previously explained, it is improper for Plaintiffs to refuse to provide all Defendants with discovery concerning the '532 patent.

WINSTON
&STRAWN

September 27, 2017
Page 7

*Second*, Plaintiffs' response is ambiguous and appears to limit the search for documents and things relating to the Examples, Tables, and Figures in the Patents-in-Suit to the subset of documents created during the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit or are contained within the file histories of the asserted patents. There is no basis for such limitation. Documents concerning the experimental and factual support for all portions of the Patents-in-Suit are discoverable, regardless of whether or not they were created during the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit, and are wholly proportionate to the needs of the claims and defenses in this litigation.

Please supplement your response to Request No. 8 to confirm that Plaintiffs will search for and produce to all Defendants all laboratory notebooks, records and communications concerning the Examples, Tables, and Figures in the Patents-in-Suit, including the '532 patent, especially with respect to the testing data mentioned in the specification but not disclosed to the PTO until the supplemental examination.

### I.      RFP Response No. 9

Request No. 9 seeks documents and things "containing data, test results, files, and/or experiments" conducted by or in collaboration with the inventors "concerning mirabegron extended-release tablets or mirabegron active pharmaceutical ingredients . . . ." Plaintiffs' response states that they will search for and produce "documents and things relating to the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit being asserted" against each Defendant, "including such relevant non-privileged/non-work product documents and things relating to the claimed crystal forms of mirabegron, and the method of using mirabegron . . . ." This again is improper.

*First*, as previously explained, it is improper for Plaintiffs to refuse to provide all Defendants with discovery concerning the '532 patent.

*Second*, Plaintiffs' response is ambiguous and appears to limit the search for documents and things containing data, test results, files, and/or experiments conducted by or in collaboration with the inventors concerning mirabegron extended-release tablets or mirabegron active pharmaceutical ingredients to the subset of documents created during the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit. There is no basis for such limitation. Documents containing data, test results, files, and/or experiments conducted by or in collaboration with the inventors concerning mirabegron extended-release tablets or mirabegron active pharmaceutical ingredients are discoverable, regardless of whether or not they were created during the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit, and are wholly proportionate to the needs of the claims and defenses in this litigation. For example, Plaintiffs' data, test results, files, and/or experiments conducted by or in collaboration with the inventors concerning mirabegron extended-release tablets or mirabegron active pharmaceutical ingredients may have occurred after the filing of the patents during preparation of NDA No. 202611 and would be relevant to the validity of the claimed subject matter.



Please supplement your response to Request No. 9 to confirm that Plaintiffs will search for and produce to all Defendants all documents and things containing data, test results, files, and/or experiments conducted by or in collaboration with the inventors concerning mirabegron extended-release tablets or mirabegron active pharmaceutical ingredients.

### J.    RFP Response No. 10

Request No. 10 seeks documents and things "concerning the preparation, characterization, testing, and/or analysis performed by or on behalf of Plaintiffs, or any other person, on any sample of mirabegron extended-release tablets, including all laboratory notebooks." Plaintiffs' response improperly limits the scope of discovery that it will provide in response to this request to "any testing and/or analysis of Defendants' ANDA Products" that Astellas relies on in the Current Litigation in its case against each Defendant. This is improper.

There is no basis for limiting the scope of this request to documents concerning Plaintiffs' analysis of Defendants' ANDA products. Documents and things concerning the "preparation, characterization, testing, and/or analysis" of Plaintiffs' own samples of mirabegron extended-release tablets, including all laboratory notebooks, are discoverable and wholly proportionate to the needs of the claims and defenses in this litigation. Also, testing that Plaintiffs have (or have had) conducted that refutes their contentions (*e.g.* on infringement) are also relevant and discoverable.

Please supplement your response to Request No. 10 to confirm that Plaintiffs will search for and produce to all Defendants all documents and things concerning the preparation, characterization, testing, and/or analysis performed on any sample of its own mirabegron extended-release tablets and Defendants ANDA products, regardless of whether Plaintiffs will rely on them or not.

### K.    RFP Response No. 11

Request No. 11 seeks documents and things "concerning any communications . . . between Plaintiffs . . . and any third party . . . relating to: (a) the Patents-in-Suit; (b) the applications from which the Patents-in-Suit issued; (c) the Current Litigation; (d) the alleged invention(s) of the Patents-in-Suit; and/or (e) the prosecution of the Patents-in-Suit." Plaintiffs' response states:

- "Astellas has produced the certified file histories of the Patents-in-Suit being asserted against [each Defendant], and the supplemental examination of the '532 patent, and the '029 patent";

- "Astellas will search for and produce relevant non-privileged/non-work product documents and things relating to the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit being asserted against [each Defendant];"



September 27, 2017
Page 9

- "responsive and relevant non-privileged/non-work product documents and things relating to any asserted claim or defense by [each Defendant] in this Litigation;" and

- "responsive and relevant non-privileged/non-work product documents and things relating to the prosecution of the Patents-in-Suit being asserted against [each Defendant], to the extent they exist and are located after a reasonable search . . ."

This is improper.

*First*, as previously explained, it is improper for Plaintiffs to refuse to provide all Defendants with discovery concerning the '532 patent.

*Second*, Plaintiffs' response is ambiguous. It is unclear whether Plaintiffs are agreeing to search for and produce documents concerning communications with any third party other than the PTO. It is also unclear from Plaintiffs' response which categories of documents Plaintiffs are actually agreeing to search for and produce. *See* Fed. R. Civ. P. 34 (b)(2)(c).

Please supplement your response to Request No. 11 to confirm that Plaintiffs will search for and produce to all Defendants documents concerning any communications with any third party relating to the Patents-in-Suit, including the '532 patent, their respective applications, their respective prosecutions, the alleged inventions of the Patents-in-Suit, and the Current Litigation.

### M.    RFP Response No. 13

Request No. 13 seeks documents and things "concerning the research and development of any polymorph of mirabegron, extended release mirabegron product, or method of using an extended release mirabegron product." Plaintiffs' response states that "Astellas will search for and produce . . . documents and things relating to the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit being asserted against [each Defendant], including such relevant non-privileged/non-work product documents and things relating to the claimed crystal forms of mirabegron, and the claimed method of using mirabegron . . . ." This is again improper.

*First*, as previously explained, it is improper for Plaintiffs to refuse to provide all Defendants with discovery concerning the '532 patent.

*Second*, Plaintiffs' response is ambiguous and appears to limit the search for documents and things "concerning the research and development of any polymorph of mirabegron, extended release mirabegron product, or method of using an extended release mirabegron product" to a subset of documents created during the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit. There is no basis for such limitation. Documents "concerning the research and development of any polymorph of mirabegron, extended release mirabegron product, or method of using an extended release

WINSTON
&STRAWN

mirabegron product" are discoverable, regardless of whether or not they were created during the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit, and are wholly proportionate to the needs of the claims and defenses in this litigation. For example, Plaintiffs' data, test results, files, and/or experiments conducted by, or in collaboration with, the inventors concerning mirabegron extended-release tablets or mirabegron active pharmaceutical ingredients may have occurred after the filing of the patents during preparation of NDA No. 202611 and would be relevant to the validity of the claimed subject matter.

Please supplement your response to Request No. 13 to confirm that Plaintiffs will search for and produce to all Defendants documents concerning the research and development of any polymorph of mirabegron, extended release mirabegron product, or method of using an extended release mirabegron product.

### N.    RFP Response No. 14

Request No. 14 seeks documents and things "identifying the date(s) on which the subject matter disclosed, claimed, or believed by Plaintiffs to be covered by the claims in the Patents-in-Suit was first offered for sale, first sold, first used in public, first disclosed to someone other than the inventor(s) of each respective Patent-in-Suit, and/or first published." Plaintiffs' response state that "Astellas will search for and produce the first printed publication(s) of which it is aware that patent or describe the subject matter of the claims of the Patents-in-Suit being asserted against [each Defendant]," and that "[t]here was no public use or sale in the United States of the subject matter of the claims of the Patents-in-Suit being asserted against [each Defendant] prior to the June 28, 2012 approval date of NDA No. 202611." This is improper.

*First*, as previously explained, it is improper for Plaintiffs to refuse to provide all Defendants with discovery concerning the '532 patent.

*Second*, there is no basis for refusing to provide all Defendants with discovery concerning the dates on which the subject matter of the Patents-in-Suit was first offered for sale, sold, or disclosed to someone other than the inventors. Moreover, Plaintiffs' statement that "[t]here was no public use or sale in the United States of the subject matter of the claims of the Patents-in-Suit being asserted against [each Defendant] prior to the June 28, 2012 approval date of NDA No. 202611" is a conclusory statement and not a proper basis for objecting to discovery.

*Third*, Plaintiffs' objections to certain phrases as vague and ambiguous are improper. As set forth in the Instructions, "if ... Plaintiffs claim any ambiguity in interpreting [a Request] ..., such claim shall not be utilized by Plaintiffs as a basis for refusing to answer; rather, Plaintiffs shall set forth as part of their answer to the [Request] the language deemed to be ambiguous and the interpretation chosen to be used in answering the [Request]." Instruction No. 30. Plaintiffs have failed to set forth an alternative definition. Further, the terms Plaintiffs object to are relatively straightforward and simple terms and it is unclear to Defendants why Plaintiffs believe they are vague and ambiguous. Thus, this is a cursory and improper objection and provides no basis for Plaintiffs to refuse to respond.



Please supplement your response to Request No. 14 to confirm that Plaintiffs will search for and produce to all Defendants documents concerning the dates on which the subject matter of the Patents-in-Suit, including the '532 patent, were first offered for sale, sold, publicly used, disclosed to someone other than the inventors, or published.

### O.     RFP Response No. 15

Request No. 15 seeks documents and things "submitted to or received from the FDA relating to (a) the Patents-in-Suit; (b) Myrbetriq®; (c) mirabegron extended-release, 25 mg and 50 mg; and (d) NDA No. 202611 and any supplements and/or amendments thereto." Plaintiffs' response states that "Astellas will search for and produce relevant non-privileged/non-work product documents and things relating to the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit being asserted against [each Defendant], including such relevant non-privileged/non-work product documents and things relating to the claimed crystal forms of mirabegron, and the claimed method of using mirabegron."   This is improper and non-responsive.

*First*, as previously explained, it is improper for Plaintiffs to refuse to provide all Defendants with discovery concerning the '532 patent.

*Second*, there is no basis for refusing to provide all Defendants with the discovery requested in this Request as it is clearly relevant to at least the issues of claim construction, infringement, and invalidity.  Plaintiffs appear to be limiting the scope of their response to documents created during the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit asserted against each Defendant.  There is no basis for such a limitation.  Plaintiffs' post-filing research and analysis is relevant to at least validity of the claimed subject matter.

Discovery of all documents and things submitted to or received from the FDA regarding the Patents-in-Suit, Myrbetriq®, mirabegron extended-release, 25 mg and 50 mg, and NDA No. 202611 and any supplements and/or amendments thereto is wholly proportionate to the needs of the claims and defenses in this litigation.  Please supplement your response to Request No. 15 to confirm that Plaintiffs will search for and produce to all Defendants documents and things submitted to or received from the FDA regarding the Patents-in-Suit, Myrbetriq®, mirabegron extended-release, 25 mg and 50 mg, and NDA No. 202611.

### P.     RFP Response No. 16

Request No. 16 seeks documents and things "concerning any research, development, testing, characterization, or analysis of the compound disclosed in the Patents-in-Suit, including but not limited to, testing involving x-ray powder diffraction and differential scanning calorimetry."  Plaintiffs' response states that Astellas will search for and produce "documents and things relating to the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit asserted against [each Defendant], including such relevant non-privileged/non-work product documents and

WINSTON
&STRAWN

September 27, 2017
Page 12

things relating to the claimed crystal forms of mirabegron, and the claimed method of using mirabegron." This is improper.

Plaintiffs appear to be limiting the scope of their response to documents created during the research and development that led to the conception and/or reduction to practice of the subject matter of the claims of the Patents-in-Suit asserted against each Defendant. There is no basis for such a limitation. Plaintiffs' post-filing research and analysis is relevant to at least validity of the claimed subject matter.

Please supplement your response to Request No. 15 to confirm that Plaintiffs will search for and produce to all Defendants documents and things concerning any research, development, testing, characterization, or analysis of mirabegron, including x-ray powder diffraction and differential scanning calorimetry testing.

### Q.    RFP Response No. 17

Request No. 17 seeks documents and things "concerning any off-label use of any extended release mirabegron formulation." Request No. 17 is relevant to Plaintiffs' claim that Defendants indirectly infringe the Patents-in-Suit, as well as Defendants' defenses to Plaintiffs' contributory infringement claims. Plaintiffs are improperly refusing to provide any discovery responsive to this request as Plaintiffs' objections are baseless.

*First*, Plaintiffs' objection to "off-label use" as vague and ambiguous is not a proper basis for refusing to produce documents as described above. Further, the phrase "off-label use" is not vague and ambiguous. To eliminate any potential ambiguity, "off-label use" refers to any use of MYRBETRIQ® other than "for the treatment of overactive bladder (OAB) with symptoms of urge urinary incontinence, urgency, and urinary frequency."

*Second*, Plaintiffs have not agreed to search for documents responsive to Request No. 17, and, thus, Plaintiffs could not have possibly determined that any document responsive to this request is privileged or protected from discovery. Therefore, your privilege objection is improper boilerplate.

*Third*, Plaintiffs objections based on "legal conclusions/litigation strategy" and imposing obligations exceeding or inconsistent with the rules and laws are improper because they are (a) not specific and (b) do not indicate whether Plaintiffs are withholding documents in light of those objections in contravention to Fed. R. Civ. P. 34. *See, e.g.*, Fed. R. Civ. P. 34 (b)(2). As such, these improper objections are waived and do not provided a proper basis for refusing to produce the documents and things responsive to this Request.

Please supplement your response to Request No. 17 to confirm that Plaintiffs will search for and produce to all Defendants documents and things concerning any off-label use of any extended release mirabegron formulation.



### R.  RFP Response Nos. 18-22

Request Nos. 18-22 relate to secondary considerations and respectively seek:

- [RFP 18] "[D]ocuments and things "concerning any alleged objective indicia of nonobviousness … and all document concerning any alleged nexus between any alleged objective indicia of nonobviousness and Myrbetriq® or any other product Plaintiffs contend is covered by any claim of the Patents-in-Suit;"

- [RFP 19] "Representative marketing documents describing, disclosing, concerning, or relating to products believed by Plaintiffs to be covered by any claim of the Patents-in-Suit . . . "

- [RFP 20] "Documents sufficient to establish costs of marketing and advertising (including professional detailing and direct-to-consumer) for any product believed by Plaintiffs to be covered by any claim of the Patents-in-Suit . . ."

- [RFP 21] "Representative business plans, brand plans, operation plans, marketing plans, business forecasts, or other plans describing, disclosing, concerning or relating to any products believed by Plaintiffs to be covered by any claim of the Patents-in-Suit . . ."

- [RFP 22] "Representative documents relating to the U.S. sales figures and profits for any products believed by Plaintiffs to be covered by any claim of the Patents-in-Suit . . . "

Plaintiffs' responses are deficient and inconsistent with its obligations under the Federal Rules of Civil Procedure to state with specificity the grounds for objection, whether any responsive materials are being withheld on the basis of the objection, and when the production will begin and end.  *See, e.g.*, Fed. R. Civ. P. 34 (b)(2).

*First*, the caveats and qualifications in Plaintiffs' response make it unclear when they will make their production.  Plaintiffs' responses to Request Nos. 18-22 state that they will produce documents "at the appropriate time pursuant to the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and by order of the Court to the extent asserted by Astellas in the Current Litigation."  It is unclear whether Plaintiffs are agreeing to produce any documents before the expert discovery phase of this litigation.  Please supplement your responses to Request Nos. 18-22 to clarify that Plaintiffs will produce responsive documents to all Defendants during the fact discovery phase of this litigation as this is the appropriate time for such production.

*Second*, with respect to Request No. 18, Plaintiffs' response states "[a]s this Request is overly broad and providing a response would be unduly burdensome, summary information or representative documents may be provided."  It is unclear what part of the request is overly broad, and which secondary consideration(s) Plaintiffs are providing summary information or representative documents on.  As made clear by Request Nos. 19-22, Defendants

WINSTON
&STRAWN

are agreeable to the production of representative marketing materials and business plans, along with documents sufficient to establish costs of marketing and representative sales figures and profits.  However, with the exception of the categories of documents specified in Request Nos. 19-22, Plaintiffs must agree to produce documents that are otherwise responsive to Request No. 18.  Please supplement your response to Request No. 18 to clarify that Plaintiffs will search for and produce to all Defendants documents and things concerning any objective indicia of nonobviousness.

### S.   RFP Response No. 24

Request No. 24 seeks any "agreements concerning the Patents-in-Suit, including (a) all license and assignment agreements; (b) all purchase and sale agreements; (c) all settlement agreements and covenants not to sue; and (d) documents sufficient to establish that Plaintiffs have standing to bring the Current Litigation."  Plaintiffs' response improperly limits the scope of discovery that it will search for and produce to "assignments and license agreements for the Patents-in-Suit asserted against [each Defendant] sufficient to show Astellas's ownership and standing . . . ."  There is no basis for Plaintiffs' refusal to search for and produce (a) all license and assignment agreements; (b) all purchase and sale agreements; and (c) all settlement agreements and covenants not to sue.  These agreements are highly relevant to the parties' claims and defenses in this litigation, including secondary considerations and the validity of the Patents-in-Suit under 35 USC § 102.  Please supplement your response to Request No. 24 to clarify that Plaintiffs will search for and produce to all Defendants all license and assignment agreements, all purchase and sale agreements, and all settlement agreements and covenants not to sue.

### 2.   Deficiencies in Plaintiffs' Interrogatory Responses

### A.   General Objection No. 10

General Objection No. 10 objects to the definition of "Patents-in-Suit" to the extent it refers to the '532 patent for the non-Actavis and Sawai Defendants, and states that Plaintiffs will only provide information pertaining to the validity of the '532 patent "to the Defendants who have challenged the validity of the '532 patent."  This is improper for the reasons described above for General Response No. 6, and Plaintiffs' RFP Response No. 7.  Please withdraw Plaintiffs' improper General Objection No. 10.

### B.   Interrogatory Response No. 1

Interrogatory No. 1 requests a description of the circumstances "of the conception and reduction to practice of each claim of the Patents-in-Suit, including, without limitation, the earliest claimed priority date for each claim; the dates of the alleged conception and reduction to practice; the contribution of each named inventor to the alleged conception and/or reduction to practice; the identity of all documents relevant to the alleged conception and/or reduction to practice (including, but not limited to, all laboratory notebooks where the alleged conception and reduction to practice is recorded); and identify the three (3) persons, other than the Inventors of the Patents-in-Suit, most knowledgeable concerning the conception and reduction to practice of

the purported invention(s) of the Patents-in-Suit, Myrbetriq® or any product Plaintiffs contend is covered by the Patents-in-Suit, including a summary of the role of each identified person." Plaintiffs' response is deficient because it recites the priority information for the Patents-in-Suit, but provides no substantive information regarding the conception and reduction to practice of each claim of the Patents-in-Suit.

Plaintiffs object to this interrogatory as "premature" because: "Defendants have not cited any facts that make the conception and reduction to practice of the asserted claims of the Patents-in-Suit relevant;" it seeks "expert discovery or claim construction"; and it "seeks to limit and define Astellas's contentions before discovery is substantially complete, or prematurely seeks information to be disclosed prior to the time set by the Court in the Scheduling Order (D.I. 25) for such discovery." These objections are improper because Rule 33 of the Federal Rules of Civil Procedure specifically states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." *See* Fed. R. Civ. P. 33(a). Moreover, Defendants have asserted that the claims of the Patents-in-Suit are invalid under 35 U.S.C. §§ 102 and 103 in their counterclaims, and the dates of conception and reduction to practice of the claims of the Patents-in-Suit are relevant to the scope of prior art.

Plaintiffs also object to identifying three non-inventors that are most knowledgeable concerning the conception and reduction to practice of the claims of the Patents-in-Suit, because the phrase "most knowledgeable" is vague, ambiguous, unduly burdensome, irrelevant and impossible to ascertain. As described above, this objection does not justify Plaintiffs' refusal to provide responsive information. Further, Plaintiffs used the exact same phrase in their Interrogatories to Defendants. Defendants' interrogatory seeks identification of three non-inventors knowledgeable about the conception and reduction to practice of the claims of the Patents-in-Suit, Myrbetriq®, or any product Plaintiffs contend is covered by the Patents-in-Suit. Plaintiffs have identified none, a response inconsistent with Plaintiffs' own discovery letters to each Defendant demanding identification of three persons for each interrogatory response regardless of whether three such persons might even exist.

Please supplement your response to Interrogatory No. 1 to identify the dates of conception and reduction to practice of each claim of the Patents-in-Suit, describe the contribution of each named inventor to the conception and reduction to practice of the Patents-in-Suit, identify all documents relating to the conception and reduction to practice of the Patents-in-Suit, and identify three non-inventors that are most knowledgeable about the conception and reduction to practice of the claims of the Patents-in-Suit, Myrbetriq®, or any product Plaintiffs contend is covered by the Patents-in-Suit.

## C.   Interrogatory Response No. 2

Interrogatory No. 2 requests identification of three non-inventors "most knowledgeable concerning the research and development of any formulation of Myrbetriq® or any product Plaintiffs contend is covered by the Patents-in-Suit," including a summary of the role of each identified person, a general description of the types and location of relevant documents and things concerning such research and development, and identification of where the



research and development is documented in such evidence. Plaintiffs' response is deficient because it fails to provide any responsive information, and Plaintiffs' objections are baseless.

*First*, Plaintiffs' relevance and proportionality objections are not bases for refusing to provide any responsive information because this interrogatory seeks discovery that is relevant to, *inter alia*, inventorship and secondary considerations.

*Second*, Plaintiffs once again object to the phrase "most knowledgeable" as vague, ambiguous, and unduly burdensome, but these objections are not a justification for refusing to provide any responsive information. Plaintiffs must identify three non-inventors knowledgeable about the research and development of Myrbetriq®. It is clearly inconsistent for Plaintiffs to take one position on such interrogatories in its responses and another in discovery letters to Defendants.

*Third*, Plaintiffs object to this interrogatory "to the extent" it seeks privileged or protected information, legal conclusions, litigation strategy, expert discovery or claim construction. Again, these objections are not proper bases for refusing to provide any substantive discovery. The identities of persons with knowledge of research and development of Myrbetriq® are discoverable facts.

Please supplement your response to Interrogatory No. 2 to provide a full and substantive response consistent with your obligations under the Federal Rules of Civil Procedure.

### Interrogatory Response No. 3

Interrogatory No. 3 requests identification of details regarding each Figure, Table, and Example in the Patents-in-Suit, such as the start and end dates, the people involved, batch and lot numbers, and documents related to such experiments (by Bates range). Plaintiffs' response states "Astellas agrees to "identify" by production Bates numbers relevant nonprivileged/non-work product documents that were the basis for each Figure, Table, or Example in the Patents-in-Suit, to the extent they exist and are located after a reasonable search. Such experiments were conducted in the laboratories of Yamanouchi Pharmaceutical Co., Ltd. on the dates indicated in the documents, to the extent the documents are dated therein. To the extent this Interrogatory seeks more information, Astellas objects as unduly burdensome." This is deficient.

Astellas has failed to provide any specificity as to why a response beyond producing documents would be burdensome, let alone unduly so. Further, it is Defendants' understanding that all but two of the named inventors on the Patents-in-Suit are still employees of Astellas. Thus, a simple phone call will likely produce information responsive to this Request, which would be barely any burden at all.

Please supplement your response to Interrogatory No. 3 to provide a full and substantive response consistent with your obligations under the Federal Rules of Civil Procedure, including the start and end dates, the people involved, batch and lot numbers, and documents

 WINSTON
&STRAWN

related to such experiments (by Bates range) related to each Figure, Table, and Example in the Patents-in-Suit.

***

      Please let us know when you are available next week to meet and confer on the issues described above.

Very truly yours,

Bryce A. Cooper

cc: Counsel of Record

# Exhibit Y



**WINSTON & STRAWN LLP**

North America   Europe   Asia

35 W. Wacker Drive
Chicago, IL 60601
T +1 312 558 5600
F +1 312 558 5700

**CHRISTOPHER P. WILSON**
(312) 558-3274
CPWilson@winston.com

January 4, 2018

**Via Email**

Simon Roberts
Erica Norey
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, NY 10104-3800

**Re:** *Astellas Pharma Inc., et al. v. Actavis Elizabeth LLC, et al.,* **C.A. No. 16-905 (SLR) (D. Del.) Consolidated**

Dear Simon and Erica:

I write in follow-up to our December 14, 2017 meet and confer in the above-captioned litigation. Thank you again for speaking with Defendants regarding their concerns with Plaintiffs' responses to Defendants' First Set of Requests for Production and First Set of Interrogatories. The below summarizes the issues addressed during the call and proposes further follow-up action as necessary.

**Search Terms.** You explained that Plaintiffs have conducted a "reasonable search" for responsive documents without search terms, but are considering undertaking a supplemental search for documents using a set of search terms. You indicated that you would share search terms with Defendants if Plaintiffs opt to use them. You further indicated that you would also share information regarding the non-search-term methodology Plaintiffs employed to identify the initial set of potentially responsive documents.

On December 29, 2017, you provided 11 search terms via email. In addition to those 11 terms, Defendants request that Plaintiffs employ the following additional search terms:

- "amorphous OR アモルファス"; and

- Terms that would capture the patents-in-suit and patent application numbers (*e.g.*, "532," "117," "049," "474," and/or "872").

Additionally, please confirm that Plaintiffs will be applying all of these terms to the custodian and non-custodial data sources identified in their 4/24/17 Delaware Default Standard Notices (pursuant to D. Del. Default Discovery Rules Par. 5.b), as well as all inventors listed on the face of the Patents-in-Suit. Without this additional information, Defendants cannot evaluate whether the methodology was, in fact, reasonable and in accordance with the Default Standard for Discovery in the District of Delaware.

**Documents Related to the '532 Patent.** You indicated that you would abide by the relevant provisions of the Stipulated Protective Order and produce documents concerning the '532 patent to all



WINSTON
&STRAWN
LLP

January 4, 2018
Page 2

Defendants and not just Actavis and Sawai, but would produce only to Actavis and Sawai documents that pertain *solely* to the validity, enforceability or infringement of the '532 patent.

**Documents Concerning "Conception and Reduction to Practice."** This issue touched on nearly every document request that the parties discussed during the meet and confer, due to Plaintiffs' position that they will broadly produce responsive and non-privileged documents concerning the conception and reduction to practice of the subject matter claimed in the asserted patents, but will be more limited in their production of documents that do not fall within the scope of "conception and reduction to practice."

As Defendants have explained, research and development relating to the claimed subject matter, but occurring after the priority date may be relevant to, at least, Defendants' anticipation and § 112 defenses. Defendants indicated that they generally consider documents pertaining to the research and development of both the claimed subject matter and the commercial Myrbetriq® product to fall within the scope of their document requests. However, you indicated that Plaintiffs will not broadly produce all documents that relate to the commercial product, but that Plaintiffs will generally produce responsive and non-privileged documents that relate to the claimed inventions. You also indicated that there are no specific categories of documents identified in Defendants' Requests for Production to which Plaintiffs have a categorical objection to production. The parties agreed that inherent to full resolution of this issue is a review of the search terms that Plaintiffs intend to employ to identify responsive documents, and/or a direct review of documents that Plaintiffs ultimately produce, to determine whether there are any gaps in the production of relevant documents from Defendants' perspective. After review of the terms you provided on December 29, Defendants withdraw their request at this time.

**Documents "In the Public Domain."** The parties agreed that responsive documents collected during the parties' reasonable searches will not be withheld simply because they may also be in the public domain.

**Objections to Production by Third Parties.** The parties agreed that they will abide by the relevant provisions of the Stipulated Protective Order with respect to objections by third parties to the production of documents that are within the control of a party to the action but over which the third party has a claim of confidentiality.

**Documents Concerning the Testing and Analysis of Mirabegron Products.** Defendants clarified during the meet and confer that, with respect to RFP #10, they are seeking documents pertaining to Plaintiffs' testing of their own mirabegron products, rather than simply Plaintiffs' testing of Defendants' product and API samples. You indicated that Defendants' RFP #10 was unreasonably broad, and that it would be unnecessary and unduly burdensome for Plaintiffs to produce a large amount of testing data related to the commercial Myrbetriq® product. Plaintiffs' contention that testing data relating to the commercial Myrbetriq® product is unnecessary and unduly burdensome is unreasonable and directly contradicted by Plaintiffs' identification of NDA 202611 for Myrbetriq® as a relevant category of documents in its Initial Disclosures. You indicated, however, that Plaintiffs would consider producing test results in response to a more limited request from Defendants. Defendants propose limiting their Request #10 to the following:



January 4, 2018<br/>Page 3

Documents sufficient to show the characterization, testing, and analysis (including XRPD and/or DSC) of the API in any mirabegron drug product, including such characterization, testing, and analysis that was conducted during research and development of Myrbetriq®, as well as the sections of NDA 202611 concerning the characterization, testing, and analysis of the API in the drug product.

Please let us know if Plaintiffs agree to produce documents responsive to this revised request.

**Off-Label Use of Mirabegron Products.**  Defendants explained that, in addition to issues concerning indirect and contributory infringement, information relating to off-label use of mirabegron products is relevant to secondary considerations.  For instance, if off-label usage is driving sales of mirabegron products, such sales would be relevant to commercial success.  You indicated that Plaintiffs will reconsider their objection to this request (Defendants' RFP #17) and will follow up with Defendants. Please let us know as soon as possible if Plaintiffs are willing to withdraw this objection and produce relevant documents.

**Agreements Concerning the Asserted Patents.**  Defendants explained that agreements such as licensing agreements and sales agreements are similarly relevant to secondary considerations, including but not limited to commercial success, such that limiting the production in response to Defendants' RFP #24 to just agreements "sufficient to show ownership and standing" would exclude relevant and responsive documents.  You indicated that Plaintiffs will reconsider their objection to this request and will follow up with Defendants.  Please let us know as soon as possible if Plaintiffs are willing to withdraw this objection and produce relevant documents.

**Interrogatory Responses.**  Defendants indicated their concerns with respect to Plaintiffs' responses to Defendants' Interrogatory Nos. 1-3 were generally addressed in the discussion concerning Defendants' requests for production, and further that a more productive conversation regarding Plaintiffs' responses to the interrogatories could be had after Defendants have an opportunity to review Plaintiffs' document production.  However, Sawai requested that Plaintiffs provide a verified statement in response to Defendants' Interrogatory No. 1 that there is no one else at any of Plaintiffs that have knowledge that is responsive to Interrogatory No. 1.  You indicated that Plaintiffs would consider the request.  Please let us know as soon as possible if Plaintiffs are willing to provide such a verification and when you will do so.

If we have misstated anything above, please let us know.

Sincerely,

Christopher P. Wilson

cc:   Counsel of Record

# Exhibit Z



FITZPATRICK, CELLA, HARPER & SCINTO

SIMON D. ROBERTS
sroberts@fchs.com
212-218-2547
www.fitzpatrickcella.com

NEW YORK
1290 Avenue of the Americas
New York, NY 10104-3800
T 212-218-2100
F 212-218-2200

November 17, 2017

By Email

Bryce A. Cooper
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

Re:   *Astellas Pharma Inc. et al. v. Sawai Pharmaceutical Co., Ltd. and Sawai USA, Inc. et al.*, C.A. No. 16-905-JFB-CJB (Consolidated)

Dear Counsel,

We write in response to Defendants' letter regarding Plaintiffs' Responses and Objections to Defendants' First Joint Requests for the Production of Documents and Things (Nos. 1-24) ("RFP Responses") and Plaintiffs' Responses and Objections to Defendants' First Joint Set of Interrogatories (Nos. 1-3) ("Interrogatory Responses").

As a preliminary matter, we generally disagree with all of Defendants' claims that any of Plaintiffs' responses were improper, ambiguous, incomplete, and/or violate the Local Rules of the District of Delaware. To the extent Plaintiffs do not address the merits of any argument, it should not be read as an explicit or implicit agreement with them. Detailed responses to Defendants' contentions follow.

1.   <u>Plaintiffs' RFP Responses</u>

a.   **Search Terms**

Plaintiffs are still in the process of assessing methodologies for locating potentially responsive ESI. To the extent search terms are employed in accordance with Local Rule 5(b), Plaintiffs will notify Defendants in a separate letter. We note that not all Defendant(s) have identified search terms to Plaintiffs and we similarly request a status update from those Defendant(s).

b.   **General Response No. 6**

While we generally disagree with many of the assertions Defendants make with respect to General Response No. 6, and without addressing the merits of those assertions, we do not

November 17, 2017
Page 2

believe there is an overall dispute with regard to the production of information related to the '532 patent.

To the extent Plaintiffs agree to produce documents, subject to the other General Responses and General and Specific objections for each Request for Production, Plaintiffs will only produce documents *solely* concerning the validity, enforceability or infringement of the '532 patent to those Defendants who have challenged the validity of that patent. We remind Defendants that the Protective Order in this case governs the sharing of such information and states that "[a]ny person of a Defendant Group permitted access to CONFIDENTIAL INFORMATION of Plaintiffs that relates solely to the validity, enforceability or infringement of U.S. Patent No. 6,346,532 (the '532 patent) shall not produce or otherwise disclose such CONFIDENTIAL INFORMATION to any other Defendant Group that is not asserting that the '532 patent is invalid, unenforceable, and/or not infringed, without first obtaining (1) consent from the Plaintiffs or (2) an order from the Court..." D.I. 66 at 11. Plaintiffs do not provide any such consent at this time.

c.      **General Objection No. 4**

We generally disagree with your characterization of this General Objection. As noted in General Objection 4, Plaintiffs intend to adhere to paragraph 4(e) of the Delaware Default Standard for Discovery unless otherwise specified in a particular response – meaning that the six year cut-off would not apply to, *e.g.*, "discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit". Following the default standard is not tantamount to a "unilateral refusal to produce documents." Additionally, we see no "showing of good cause" from Defendants that justifies holding Plaintiffs to discovery obligations wholly unrestricted by date. Notwithstanding our objections, to the extent that Plaintiffs intend to rely on objective indicia of non-obviousness, we confirm documents supporting those claims will be produced, regardless of the date of the document.

d.      **General Objection No. 5**

Without addressing the merit of Defendants' assertions related to General Objection No. 5, and to the extent that a document request would encompass "drafts of documents," Plaintiffs are willing to agree that no party in this case need produce draft documents.

e.      **General Objection No. 7**

Defendants' arguments here are wholly without merit. In addition, Defendant(s) have similarly limited their Responses to Plaintiffs' Requests for Production by objecting to the production of documents and things already in the possession of Plaintiffs or otherwise publicly available. Based at least on the foregoing, Plaintiffs do not intend to withdraw General Objection No. 7 at this time.

November 17, 2017
Page 3

### f.    General Objection No. 10

Plaintiffs generally disagree with the characterization of this General Objection. In addition, Defendant(s) have similarly limited their Responses to Plaintiffs' Requests for Production by objecting to the production of documents and things to the extent they seek documents that are subject to confidentiality agreements and protective orders with third parties. Notwithstanding, and to the extent that Defendants agree to do the same, Plaintiffs are willing to supplement individual responses to RFPs to state whether any responsive materials Plaintiffs agreed to otherwise produce are being withheld solely on the basis of this objection, once document review has been completed.

### g.    RFP Response No. 6

We disagree with Defendants' contention that Plaintiffs' response to this RFP is improper. To Defendants' first point, see our response to General Objection 7, above. As a point of clarity, Plaintiffs do not intend to strip responsive, relevant files, that Plaintiffs otherwise agreed to produce, of individual documents solely on the basis that they originated from the public domain. In other words, we intend to keep these files intact unless there is another reason (related to our objections and/or what we agreed to produce) to limit their production. Please confirm that Defendants intend to do the same.

To Defendants' second point, see our response to General Response 6, above.

To Defendants' third point, see our response to General Object 7. We also generally disagree with the contention that documents originating from the public domain are easier to authenticate if located in a company's files.

### h.    RFP Response No. 7

We disagree with Defendants' contention that Plaintiffs' response to this RFP is deficient. To Defendants' first point, see our response to General Response 6, above.

To Defendants second point, Plaintiffs properly responded to this as a single Request for Production, agreeing, subject to General Responses and General and Specific objections, to produce certified file histories, supplemental exams, and documents in categories a-i that are relevant, non-privileged, non-work product, and that "relat[e] to the research and development that led to the conception and reduction to practice of the subject matter of the claims of the Patents-in-Suit." Plaintiffs' response is clear. To the extent Defendants sought a separate and distinct response to each of the subparts of this request, Defendants should have drafted them as separate and distinct requests, subject to the maximum 45 common requests for production

November 17, 2017
Page 4

allotted to Defendants collectively in this case. To Defendants third point, see our response to General Objection 7 and our response to RFP Response No. 6.

i.    **RFP Response No. 8**

We disagree with Defendants' contention that Plaintiffs' response to this RFP is deficient. To Defendants' first point, see our response to General Response 6, above.

To Defendants' second point, Plaintiffs' response is not ambiguous as we agreed to produce documents and things *relating to* the research and development that led to the conception and/or reduction to practice, and did not limit the response temporally to documents *created during* the conception and/or reduction to practice. Based on that, we do not believe there should be any further dispute on this Response.

j.    **RFP Response No. 9**

We disagree with Defendants' contention that Plaintiffs' response to this RFP is deficient. To Defendants' first point, see our response to General Response 6, above.

To Defendants' second point, see our response to RFP Response No. 8, above. Plaintiffs intend to produce, to the extent that responsive documents exist, subject to our General Responses and General and Specific objections, documents recited in our original response and concerning objective indicia of non-obviousness. Beyond those topics listed, we do not believe any other documents would be relevant.

k.    **RFP Response No. 10**

We disagree with Defendants' contention that Plaintiffs' response to this RFP is improper. Plaintiffs intend to produce, to the extent that responsive documents exist, subject to our General Responses and General and Specific objections, documents recited in our original response and concerning objective indicia of non-obviousness. Beyond those topics listed, we do not believe any other documents would be relevant.

l.    **RFP Response No. 11**

We disagree with Defendants' contention that Plaintiffs' response to this RFP is improper. To Defendants' first point, see our response to General Response 6, above.

To Defendants second point, Plaintiffs properly responded to this as a single Request for Production, agreeing, subject to General Responses and General and Specific objections, to produce certified file histories, supplemental exams, documents in categories a-e that are relevant, non-privileged, non-work product, and that "relat[e] to the research and development

November 17, 2017
Page 5

that led to the conception and reduction to practice of the subject matter of the claims of the
Patents-in-Suit," that relate to any asserted claim or defense by each Defendant in this
Litigation, and "relat[ed] to the prosecution of the Patents-in-Suit being asserted" against each
Defendant.  Plaintiffs' response is clear.  To the extent Defendants sought a separate and
distinct response to each of the subparts of this request, Defendants should have drafted them as
separate and distinct requests, subject to the maximum 45 common requests for production
allotted to Defendants collectively in this case. To the extent any communication with third
part[ies] fall within the scope of what we agreed to produce, it would be subject to our General
Objection 10.

### m.    RFP Response No. 13

We disagree with Defendants' contention that Plaintiffs' response to this RFP is
improper.  To Defendants' first point, see our response to General Response 6, above.

To Defendants' second point, see our response to RFP Response No. 8, above. Plaintiffs
intend to produce, to the extent that responsive documents exist, subject to our General
Responses and General and Specific objections, documents recited in our original response and
concerning objective indicia of non-obviousness.  Beyond those topics listed, we do not believe
any other documents would be relevant. Plaintiffs also do not agree to produce documents on
any polymorph form of mirabegron – only what is relevant to the asserted claims.

### n.    RFP Response No. 14

We disagree with Defendants' contention that Plaintiffs' response to this RFP is
improper.  To Defendants' first point, see our response to General Response 6, above.

To Defendants' second point, Plaintiffs are not refusing to provide discovery, we were
merely informing Defendants that we have no such documents to produce as Plaintiffs are not
aware of any public use or sale in the United States of the subject matter of the claims prior to
June 28, 2012.  Notwithstanding, to the extent we do discover any relevant, nonprivileged,
documents related to a sale, offer for sale, public use, or public disclosure in the United States
of the invention(s) beyond the one year critical date for the Patents-in-Suit, we would produce
it, subject to our General Responses and General and Specific objections.  We also withdraw
our objection to the vague and ambiguous terms.

### o.    RFP Response No. 15

We disagree with Defendants' contention that Plaintiffs' response to this RFP is
improper and nonresponsive.  To Defendants' first point, see our response to General Response
6, above.

November 17, 2017
Page 6

To Defendants' second point, see our response to RFP Response No. 8, above. Plaintiffs intend to produce, to the extent that responsive documents exist, subject to our General Responses and General and Specific objections, documents recited in our original response and concerning objective indicia of non-obviousness. Beyond those topics listed, we do not believe any other documents would be relevant. To the extent that Defendants continue to believe that NDA No. 202611 itself is relevant to this case (other than for topics related to objective indicia), Plaintiffs are willing to provide the table of contents for NDA No. 202611 for Defendants' review. Based on that disclosure, if Defendants can identify sections of the NDA that would be relevant to claims in this case, we would further consider their production.

p.     **RFP Response No. 16**

We disagree with Defendants' contention that Plaintiffs' response to this RFP is improper. See our response to RFP Response No. 8, above.

q.     **RFP Response No. 17**

We disagree with Defendants' contention that Plaintiffs' response to this RFP is improper. While we appreciate that Defendants provided clarification on what Defendants meant by "off-label use," Plaintiffs do not see any relevance to off-label uses to the claims and defenses in this case, including indirect or contributory infringement. Also, to Defendants' third point, we disagree that we have waived any objection to this RFP.

r.     **RFP Response Nos. 18-22**

We disagree with Defendants' contention that Plaintiffs' response to these RFPs are deficient and inconsistent.

To Defendants' first and second points, we are still investigating the scope of documents and issues related to objective indicia of non-obviousness that we may rely on in this case. We intend to produce documents on a rolling basis, and meet the discovery deadline for this case. If that changes, we will inform Defendants. To the extent such documents may exist solely in the public domain or are already in Defendants' possession, they are subject to our General Objection 7.

s.     **RFP Response No. 24**

We disagree with Defendants' contention that Plaintiffs' response to this RFP is improper.

Plaintiffs have agreed to produce, subject to its General Responses and General and Specific objections, assignments and license agreements for the Patents-in-Suit sufficient to

November 17, 2017
Page 7

show Astellas's ownership and standing to sue. In addition, there are no settlement agreements and/or covenants not to sue prior to the institution of this litigation. We do not see how *all* license and assignment agreements, beyond those showing ownership and standing to sue, would be relevant to the validity of the Patents-in-Suit. Similarly, "all purchase and sale agreements" to the extent Astellas understands this request, appears to be overwhelmingly broad. To the extent defendants are attempting to obtain documents related to a sale or offer for sale in the United States of the invention(s) beyond the one year critical date for the Patents-in-Suit, see our response to RFP Response No. 14, above.

## 2. Plaintiffs' Interrogatory Responses

### a. General Objection No. 10

We disagree with Defendants' contentions for the same reasons articulated in our responses to General Response 6 and RPF 7, above.

### b. Interrogatory Response No. 1

We disagree with Defendants' contention that Plaintiffs' response to this ROG is deficient. First, Plaintiffs' objections are not improper under Federal Rule 33(d) or any other rule that we are aware. Indeed, Rule 33 allows for interrogatories to be answered after designated discovery is complete or until some other later appropriate time. Further, Plaintiffs did provide information responsive to this interrogatory, including conception dates, and intend to supplement the response as discovery progresses.

Second, individuals most knowledgeable of the conception and reduction to practice of the claimed inventions would be the inventors themselves. What is Defendants' basis for requiring the disclosure of a total of six people "most knowledgeable" of the conception and reduction to practice of these inventions? Regardless of the bases, Plaintiffs are presently not aware of any Astellas employee with personal factual knowledge of the conception and reduction to practice of these inventions that would classify them as "knowledgeable", from what Plaintiffs understand that term to mean, beyond the inventors of the Patents-in-Suit.

### c. Interrogatory Response No. 2

Plaintiffs generally disagree with Defendants' contentions here. None of the inventions that are claimed in the asserted Patents-in-Suit relate to formulations. U.S. Pat. No. 6,562,375, which covers the formulation of Myrbetriq®, is not at issue in this case and therefore, for at least this reason, documents concerning "the research and development of any formulation of Myrbetriq®" would not be relevant or proportional to the needs of this case.

November 17, 2017
Page 8

      **d.**      **Interrogatory Response No. 3**

    We disagree with Defendants' contention that Plaintiffs' response to this interrogatory is deficient. First, discovery is ongoing and therefore a full response to this interrogatory is premature. Second, the documents provided pursuant to this interrogatory, as explained in our response, may, on their face, identify the other facts sought including dates of experiments and the identities of persons involved. We have also disclosed the location of such experiments (Yamanouchi Pharmaceutical Co., Ltd.). To the extent this interrogatory affirmatively requires Astellas to investigate every document for facts that exist beyond the face of the documents, the request is clearly overly burdensome. However, to the extent there is a specific question regarding a document produced pursuant to this topic, Defendants have an opportunity to serve an additional interrogatory requesting that information in the future and/or have the option to seek depositions of individuals who have knowledge of such documents.

***

    Plaintiffs are generally available to meet and confer on these topics to the extent these disputes have not been resolved.

Sincerely,

*Simon Roberts* (ELN)

Simon D. Roberts

cc: Counsel of Record

# Exhibit AA



CORINNE E. ATTON
catton@fchs.com
212-218-2212
www.fitzpatrickcella.com

NEW YORK
1290 Avenue of the Americas
New York, NY 10104-3800
T 212-218-2100
F 212-218-2200

January 18, 2018

**By Email**

Christopher P. Wilson
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Re:   *Astellas Pharma Inc. et al. v. Actavis Elizabeth LLC, et al.*, C.A. No. 16-905-JFB-CJB (Consolidated)

Dear Counsel,

Plaintiffs write in response to the January 4, 2018 letter from Defendants concerning the Parties' recent meet and confer on Plaintiffs discovery responses, and in response to the January 8, 2018 email from Martin S. Masar to Plaintiffs' Counsel concerning Plaintiffs' Response to Defendants Joint RFP ("JRFP") No. 26.

**Samples Pursuant To Plaintiff's Response To Defendants' JRFP No. 26**

In response to Defendants' JRFP No. 26, Plaintiffs confirm that they will produce thirty (30) Myrbetriq® 25mg tablets and thirty (30) Myrbetriq® 50 mg tablets to each of Actavis, Apotex, Lupin, Prinston, Sandoz, and Zydus; thirty (30) Myrbetriq® 50 mg tablets to Aurobindo; and thirty (30) Myrbetriq® 25 mg tablets to Sawai, provided we receive confirmation that the samples will only be used for the purpose of this litigation. In addition, Plaintiffs will produce one (1) gram samples of Plaintiffs' API to each of the aforesaid Defendants on the condition that all such samples and all information concerning the same—including, but not limited to, any testing or analysis conducted on such samples, and any recordings of the same—are designated:

> **"Confidential Information of Astellas Plaintiffs Subject To The Protective Order Entered In C.A. No. 16-905 (Consolidated) (D. Del.)"**

Because the API samples are designated Confidential under the terms of the Protective Order, please be reminded that the API samples, and all information relating to those samples, must not be disclosed to any party or person who is not authorized to have access to the same under the Protective Order. With this in mind, Plaintiffs invite each Defendant group to confirm that

January 18, 2018
Page 2

the requested samples will only be used in connection with this litigation, and to identify a person authorized to receive them under the Protective Order who we should ship them to.

Once Plaintiffs receive the requested information, Plaintiffs expect to be able to ship the aforesaid tablets within seven (7) days. Because the API samples will be shipped direct from Japan, shipment may take longer, and we may need additional information for customs.

## Astellas Search Terms

As to Defendants' request that Plaintiffs apply two additional search terms, Plaintiffs will not search for the term amorphous or its Japanese equivalent because such term is clearly overly broad. Further, Defendants' request that this term be used is, among other things, unduly burdensome, and seeks information that is not relevant to any issue in this litigation.

Plaintiffs confirm they have and will use search terms that would capture the patents-in-suit and the patent application numbers. As to the search for, and collection of documents conducted by Plaintiffs without the assistance of search terms, such methodology is protected by, among other things, attorney-client privilege.

## Documents Relating To The '532 Patent

As to documents concerning *solely* the validity, enforceability or infringement of the '532 Patent, Plaintiffs will abide by the provisions of the Protective Order, and preserve their ability to produce such documents—to the extent indicated in Plaintiffs' Responses to Defendants' various RFPs—to only Defendants Actavis and Sawai. Save as aforesaid, in accordance with Plaintiffs' Responses to Defendants' various RFPs, Plaintiffs will produce such documents (unless otherwise stated) to all Defendants.

## Documents Concerning The Inventions In The Asserted Patent Claims

As Plaintiffs have now stated multiple times, in line with the local rules, Plaintiffs will produce documents concerning the conception and reduction to practice of the subject matter of the asserted claims of the patents-in-suit. Plaintiffs confirm that Plaintiffs did not use a date restriction when searching for documents that relate to those conceptions and reductions to practice, and Plaintiffs will not withhold any such documents based on date.

As a general matter, Plaintiffs do not consider research and development of the commercial product Myrbetriq® relevant if it does not reflect the conception or reduction to practice of the asserted claims. Accordingly, Plaintiffs will not produce such discovery unless the information is otherwise relevant. For example, Plaintiffs will search for and produce documents that are relevant to unexpected results and objective indicia of non-obviousness of the subject matter of the asserted claims of the patents-in-suit.

Plaintiffs reject and deny Defendants' assertion that "there are no specific categories of documents identified in Defendants' Requests for Production to which Plaintiffs have a categorical objection to production." On the contrary, Plaintiffs will search for and produce

January 18, 2018
Page 3

documents and things in accordance with Plaintiffs' responses to Defendants' various RFPs. If Plaintiffs stated therein that they would not search for and/or produce any particular category of documents or things, then Plaintiffs will not do so.

### Documents Concerning Mirabegron Products

In response to Defendants' Joint RFP No. 10, Plaintiffs confirm that they do not intend to produce documents or things "concerning the preparation, characterization, testing, and/or analysis" of Astellas' commercial product, Myrbetriq®, save where discovery may be relevant to unexpected results and/or objective indicia of non-obviousness of the asserted claims of the patents-in-suit. Save as aforesaid, Defendants have not provided any convincing explanation as to why any additional such discovery is relevant to any issue in this litigation. As to Defendants' narrower request as stated in its January 4, 2018 letter, Plaintiffs maintain their objections to Defendants' Joint RFP No. 10, with the aforesaid exceptions.

### Defendants' Request Relating To Any Off-Label Use

Plaintiffs will conduct a reasonable search for, and to the extent such documents exist, will produce documents in Plaintiffs possession, custody or control, concerning the prevalence of any off-label use of Myrbetriq®, provided such documents are not protected by attorney-client privilege, work product immunity, or any other privilege, protection or immunity. Save as aforesaid, Plaintiffs maintain their objections and response to Defendants Joint RFP No. 17. Plaintiffs will supplement their Response to this RFP to reflect this in due course.

### Defendants' Request Concerning Licenses And Agreements

Further to Plaintiffs' Response to Defendants Joint RFP No. 24, Plaintiffs will conduct a reasonable search for, and to the extent such documents exist, will produce license agreements in Plaintiffs possession, custody or control, concerning the patents-in-suit. Save as aforesaid, Plaintiffs maintain their objections and response to Defendants Joint RFP No. 24. Plaintiffs will supplement their Response to this RFP to reflect this in due course.

### Sawai's Request Concerning Astellas' Response To Defendants' Joint Interrogatory No. 1

As to Sawai's request that Plaintiffs verify, in response to Defendants' Joint Interrogatory No. 1 "that there is no one else at any of Plaintiffs that have knowledge that is responsive to" this interrogatory, Plaintiffs are plainly unable to do so, not least because the wording "no one else" is overly broad and this request would require Plaintiffs to undertake an reasonable and unduly burdensome investigation, contrary to the Federal Rules. Discovery is ongoing. At present, Plaintiffs identify the inventors listed on the face of the patents-in-suit as the most knowledgeable persons concerning the conception and reduction to practice of the inventions of the asserted claims of those patents.

January 18, 2018
Page 4

Sincerely,

Corinne E. Atton

cc:  Counsel of Record

# Exhibit BB Remains Under Seal

# In Its Entirety

# Exhibit CC Remains Under Seal

# In Its Entirety

# Exhibit DD

| | |
|---|---|
| **From:** | Roberts, Simon |
| **To:** | Masar, Martin S.; Seidel, Chika; Chow, Arlene L.; Silver, Daniel; Leonard, Jason |
| **Cc:** | dgattuso@hegh.law; anelson@hegh.law; USR-Mirabegron; Savas, Emily; Kraman, Pilar; Abramowitz, David; Blessing, Carolyn A. |
| **Subject:** | RE: 16-cv-905 (Consol) - Astellas/Myrbetriq - Defendants" Motions |
| **Date:** | Friday, March 22, 2019 10:11:34 AM |

CONFIDENTIAL — CONTAINS SAWAI CONFIDENTIAL INFORMATION SUBJECT TO THE PROTECTIVE ORDER

Dear Marty,

We are currently considering your exemplary list of issues for Sawai's contemplated motion. Based upon the trial schedule entered by the Court, it was our understanding that motions such as these were not to be briefed until presented to the Court by letter on May 23, 2019. However, if now is the appropriate time to raise such concerns, we provide the following exemplary list of issues with Sawai's rebuttal expert reports, which we will present to the Court absent an amicable resolution:

1. Cima Rebuttal Expert Report (served 2/22/2019):
    a. **New Claim Constructions**: We intend to move to strike the new claim constructions for the polymorph patents proposed for the first time on rebuttal by Prof. Cima. *See, e.g.*, ¶¶ 188-204; 205-210, 218. We also intend to move to strike Sawai's failed construction for "main peaks". *See, e.g.*, ¶¶ 169-187.
    b. **New Sawai Non-Infringement Theories**:



    v. We intend to move to strike Prof. Cima's discussions and analyses of Prof. Atwood's .RAW data files as Sawai refused to provide the .RAW data files for its XRPD samples during discovery, preventing Astellas from performing the

same analysis on its XRPD data. *See, e.g.*, ¶¶ 352-366 and Exhibits.

vi.   We intend to move to strike Prof. Cima's Appendix C, which includes information specifically requested for Interrogatory Nos. 5-6 but was not provided.

We are willing to discuss these items on a meet and confer today (3/22) at 2 pm ET. If Sawai needs more time to consider our list of issues, we are available Monday, March 25th at 2:30 pm ET. We reserve the right to supplement our list for any motion(s) we ultimately file. We also reserve the right to raise issues and potentially move to strike portions of defendants' expert reports on secondary considerations once we have had the opportunity to review them after they are served on April 1.

**Simon Roberts**
Partner

Hogan Lovells US LLP
Direct  +1 212 918 3781

**From:** Masar, Martin S. [mailto:martin.masar@kattenlaw.com]
**Sent:** Friday, March 22, 2019 10:53 AM
**To:** Roberts, Simon; Seidel, Chika; Chow, Arlene L.; Silver, Daniel; Leonard, Jason
**Cc:** dgattuso@hegh.law; anelson@hegh.law; USR-Mirabegron; Savas, Emily; Kraman, Pilar; Abramowitz, David; Blessing, Carolyn A.
**Subject:** RE: 16-cv-905 (Consol) - Astellas/Myrbetriq - Defendants' Motions

Dear Simon (and Astellas counsel)-

Please confirm when you or your team is available this afternoon between 1-2 or 3-6 pm CT for a meet and confer on our motions to strike. Further delay from Plaintiffs in resolving these issues may necessitate extensions to the current April 1st deadline, which could have consequences on the rest of our schedule, especially the expert depositions we have currently scheduled.

Best,
Marty

**Martin S. Masar III**
Patent Attorney
Katten Muchin Rosenman LLP
525 W. Monroe Street / Chicago, IL 60661-3693
p / +1.312.902.5616 f / +1.312.902.1061
martin.masar@kattenlaw.com / www.kattenlaw.com

**From:** Masar, Martin S. <martin.masar@kattenlaw.com>
**Sent:** Wednesday, March 20, 2019 11:32 AM
**To:** Roberts, Simon <simon.roberts@hoganlovells.com>; Seidel, Chika <chika.seidel@hoganlovells.com>; Chow, Arlene L. <arlene.chow@hoganlovells.com>; Silver, Daniel

<DSilver@McCarter.com>; Leonard, Jason <jason.leonard@hoganlovells.com>
**Cc:** dgattuso@hegh.law; anelson@hegh.law; USR-Mirabegron <USR-Mirabegron@kattenlaw.com>;
Savas, Emily <esavas@lockelord.com>; Kraman, Pilar <PKraman@ycst.com>; Abramowitz, David
<DAbramowitz@lockelord.com>; Blessing, Carolyn A. <cblessing@lockelord.com>; Dennies
Varughese <DVARUGHE@sternekessler.com>
**Subject:** RE: 16-cv-905 (Consol) - Astellas/Myrbetriq - Defendants' Motions

Dear Simon,

Thanks for your email.  Upon further consideration, the second motion will be a combined motion to strike and/or reply to certain portions of certain expert reports as Plaintiffs' discovery responses (e.g., Responses to Joint Interrogatory Nos. 1, 3, 5, and 15) and their 30(b)(6) witnesses' preparedness did not put Defendants on notice of certain arguments/documents raised for the first time in Plaintiffs' Rebuttal Expert Reports and Plaintiffs' unexplained failure to disclose this information has prejudiced Defendants.

While we believe the content of our motions would be apparent from a comparison of Plaintiffs' Responses to Joint Interrogatory Nos. 1, 3, 5, 14, and 15 with the various expert reports on invalidity served in this case, we provide the attached exemplary lists to facilitate discussion at our meet-and-confer.  We propose a meet-and-confer tomorrow afternoon between 1-2 pm and 3-6 pm CT or Friday between 12 pm and 4 pm CT.

Best,
Marty

**Martin S. Masar III**
Patent Attorney
**Katten Muchin Rosenman** LLP
525 W. Monroe Street / Chicago, IL 60661-3693
p / +1.312.902.5616 f / +1.312.902.1061
martin.masar@kattenlaw.com / www.kattenlaw.com

**From:** Roberts, Simon <simon.roberts@hoganlovells.com>
**Sent:** Monday, March 18, 2019 5:55 PM
**To:** Masar, Martin S. <martin.masar@kattenlaw.com>; Seidel, Chika
<chika.seidel@hoganlovells.com>; Chow, Arlene L. <arlene.chow@hoganlovells.com>; Silver, Daniel
<DSilver@McCarter.com>; Leonard, Jason <jason.leonard@hoganlovells.com>
**Cc:** dgattuso@hegh.law; anelson@hegh.law; USR-Mirabegron <USR-Mirabegron@kattenlaw.com>;
Savas, Emily <esavas@lockelord.com>; Kraman, Pilar <PKraman@ycst.com>; Abramowitz, David
<DAbramowitz@lockelord.com>; Blessing, Carolyn A. <cblessing@lockelord.com>; Dennies
Varughese <DVARUGHE@sternekessler.com>
**Subject:** RE: 16-cv-905 (Consol) - Astellas/Myrbetriq - Defendants' Motions


Dear Marty,

In order to consider your request before a meet and confer, please provide the following information:

1. A list of the matters/theories and/or references that form the basis for your proposed motion to strike, including the paragraph numbers from the reports you seek to strike.
2. A list of the arguments and/or references you believe necessitates the leave to file a reply, including citations to the paragraphs in the opening expert reports containing those arguments.

Once we have received this information, we can schedule a meet and confer to discuss.

Best regards,
Simon

**Simon Roberts**
Partner

Hogan Lovells US LLP
Direct  +1 212 918 3781

**From:** Masar, Martin S. [mailto:martin.masar@kattenlaw.com]
**Sent:** Monday, March 18, 2019 5:58 PM
**To:** Seidel, Chika; Chow, Arlene L.; Silver, Daniel; Leonard, Jason; Roberts, Simon
**Cc:** dgattuso@hegh.law; anelson@hegh.law; USR-Mirabegron; Savas, Emily; Kraman, Pilar; Abramowitz, David; Blessing, Carolyn A.; Dennies Varughese
**Subject:** RE: 16-cv-905 (Consol) - Astellas/Myrbetriq - Defendants' Motions

Counsel-

Below is the dial-in for our meet-and-confer concerning these issues.  We hope to proceed at 11 am CST with this call.

Toll Free Number:  1-866-200-9051
PIN : 654859#

Best,
Marty

**Martin S. Masar III**
Patent Attorney
**Katten Muchin Rosenman** LLP
525 W. Monroe Street / Chicago, IL 60661-3693
p / +1.312.902.5616 f / +1.312.902.1061
martin.masar@kattenlaw.com / www.kattenlaw.com

**From:** Masar, Martin S. <martin.masar@kattenlaw.com>
**Sent:** Friday, March 15, 2019 5:40 PM
**To:** Seidel, Chika <chika.seidel@hoganlovells.com>; Chow, Arlene L. <arlene.chow@hoganlovells.com>; Silver, Daniel <DSilver@McCarter.com>; Leonard, Jason <jason.leonard@hoganlovells.com>; Roberts, Simon <simon.roberts@hoganlovells.com>
**Cc:** dgattuso@hegh.law; anelson@hegh.law; USR-Mirabegron <USR-Mirabegron@kattenlaw.com>; Savas, Emily <esavas@lockelord.com>; Kraman, Pilar <PKraman@ycst.com>; Abramowitz, David <DAbramowitz@lockelord.com>; Blessing, Carolyn A. <cblessing@lockelord.com>; Dennies Varughese <DVARUGHE@sternekessler.com>
**Subject:** 16-cv-905 (Consol) - Astellas/Myrbetriq - Defendants' Motions

Dear Counsel,

I write on behalf of Sawai and Zydus Defendants regarding two discovery motions that we expect to file with Judge Burke next week.  Please let us know if you oppose the requested relief by Tuesday, 3/19 at 2 pm CST or earlier.  In short, Sawai and Zydus intend to file:

   1)  A motion to strike the portions of Myerson, Nitti, Michel, and Vellturo Rebuttal Reports that opine on matters/theories and/or rely on references related to secondary considerations that were not previously disclosed in Astellas' 3d Supplemental Response to Joint Interrogatory No. 14 because Astellas did not seek leave as required by Paragraph 7 of the Court's October 24, 2018 order.

   2)  A motion for leave to file reply reports on invalidity from Drs. Cima and Chancellor to address arguments and/or references raised for the first time in Plaintiffs' expert rebuttal reports.  To be clear, these reports would be in addition to the already scheduled Defendants' expert(s)' reply reports on secondary considerations due April 1.

We are also available for a meet-and-confer on Tuesday 3/19 between 9 am and 11 am CST, if you feel one is necessary.

Best,
Marty

**Martin S. Masar III**
Patent Attorney
Katten Muchin Rosenman LLP
525 W. Monroe Street / Chicago, IL 60661-3693
p / +1.312.902.5616 f / +1.312.902.1061
martin.masar@kattenlaw.com / www.kattenlaw.com

============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information
intended for the exclusive
use of the individual or entity to whom it is addressed and may contain
information that is
proprietary, privileged, confidential and/or exempt from disclosure under
applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing,
copying, disclosure or
distribution of this information may be subject to legal restriction or

```
sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients
and delete the original
message without making any copies.
========================================================
NOTIFICATION:   Katten Muchin Rosenman LLP is an Illinois limited liability
partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
========================================================
```

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP.
For more information, see www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

# Exhibit EE

1             IN THE UNITED STATES DISTRICT COURT

2               IN AND FOR THE DISTRICT OF DELAWARE

3                          -   -   -

4     _____

5                                          )
                                           )   MDL Docket No.
      IN RE:   ARMODAFINIL PATENT          )   1:10-md-2200-GMS
6     LITIGATION                           )
                                           )
7     _____  )
                                           )
      CEPHALON INC. and CEPHALON FRANCE,   )
8                                          )
                Plaintiffs,                )
9                                          )
                    v.                     )   Civil Action No.
10                                         )   1:09-954-GMS
      MYLAN PHARMACEUTICALS INC.,          )
11                                         )
                Defendant.                 )
12    _____  )
                                           )
13                                         )
      CEPHALON INC. and CEPHALON FRANCE,   )
14                                         )
                Plaintiffs,                )
15                                         )   Civil Action No.
                    v.                     )   1:10-cv-7-GMS
16                                         )
      WATSON LABORATORIES, INC.,           )
17                                         )
                Defendant.                 )
18    _____

19    (Caption continues on following page.)

20                          -   -   -

21                   Wilmington, Delaware
                 Wednesday, November 23, 2011
22                      9:30 a.m.
                    Telephone Conference
23                          -   -   -

24    BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
25

1   CEPHALON INC. and CEPHALON FRANCE,      )
                                            )
2              Plaintiffs,                  )
                                            )
3              v.                           )   Civil Action No.
                                            )   1:10-cv-55-GMS
4   SANDOZ INC.,                            )
                                            )
5              Defendant.                   )
    ─────────────────────────────────────
6
    CEPHALON INC. and CEPHALON FRANCE,      )
7                                           )
               Plaintiffs,                  )
8                                           )
               v.                           )   Civil Action No
9                                           )   1:10-cv-210-GMS
    LUPIN LIMITED,                          )
10                                          )
               Defendant.                   )
11  ─────────────────────────────────────

12  CEPHALON INC. and CEPHALON FRANCE,      )
                                            )
13             Plaintiffs,                  )
                                            )
14             v.                           )   Civil Action No.
                                            )   1:10-cv-695-GMS
15  APOTEX CORP. and APOTEX INC.,           )   Civil Action No.
                                            )   1:10-cv-1078-GMS
16             Defendants.                  )

17                      - - -

18  APPEARANCES:

19          MARY W. BOURKE, ESQ.
            Connolly, Bove, Lodge & Hutz LLP
20                  -and-
            CHARLES E. LIPSEY, ESQ.
21          Finnegan, Henderson, Farabow, Garrett & Dunner LLP
            (Reston, VA)
22                  -and-
            BARBARA R. RUDOLPH, ESQ., and
23          LAWRENCE L. ILAG, Ph.D., ESQ.
            Finnegan, Henderson, Farabow, Garrett & Dunner LLP
24          (Washington, D.C.)

25                      Counsel for Plaintiffs Cephalon Inc.
                        and Cephalon France

1 APPEARANCES CONTINUED:

2      JOHN W. SHAW, ESQ., and
       KAREN E. KELLER, ESQ.
3      Shaw & Keller
                  -and-
4      RICHARD S. MEYER, ESQ.
       Kilpatrick Townsend & Stockton LLP
5      (Washington, D.C.)

6                 Counsel for Defendant Mylan
                       Pharmaceuticals Inc.
7
       JOHN C. PHILLIPS, JR., ESQ.
8      Phillips, Goldman & Spence, P.A.
                  -and-
9      KEVIN E. WARNER, ESQ.
       Winston & Strawn LLP
10     (Chicago, IL)

11                Counsel for Defendant Watson
                       Laboratories, Inc.
12
       NEAL BELGAM, ESQ.
13     Procter Heyman LLP
                  -and-
14     PETER M. SIAVELIS, ESQ., and
       SHON LO, ESQ.
15     McDermott Will & Emery LLP
       (Chicago, IL)
16
                  Counsel for Defendant
17                     Sandoz, Inc.

18     WILLIAM J. BURNETT, ESQ., and
       JEFFREY A. COHEN, ESQ.
19     Flaster/Greenberg P.C.
                  -and-
20     CRAIG M. KUCHII, ESQ.
       Katten Muchin Rosenman LLP
21     (Chicago, IL)

22                Counsel for Defendants
                       Apotex Inc. and
23                     Apotex Corp.

24

25

1

APPEARANCES CONTINUED:

2

      STEPHEN P. BRAUERMAN, ESQ.

3
      Bayard, P.A.
               -and-

4
      BARRY S. WHITE, ESQ., and
      JULIE E. KURZROK, ESQ.

5
      Frommer Lawrence & Haug LLP
      (New York, N.Y.)

6

                    Counsel for Defendants

7
                    Lupin Limited

8
             -  -  -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  Good morning.  Counsel, who is on
 2    the line, starting with plaintiff?
 3              MS. BOURKE:  Good morning, Your Honor.  This is
 4    Mary Bourke from Connolly Bove on behalf of the plaintiff
 5    Cephalon.  With me on the line is Charlie Lipsey, Barbara
 6    Rudolph, and Larry Ilag for Cephalon.  I believe Mr. Lipsey
 7    will be speaking on behalf of the plaintiffs.
 8              THE COURT:  Good morning.
 9              MR. LIPSEY:  Good morning, Your Honor.
10              THE COURT:  Who is appearing for the defendants?
11              MR. BELGAM:  Good morning, Your Honor.  Neal
12    Belgam representing defendant Sandoz.  I have with me Peter
13    Siavelis, who will be addressing the Court, from McDermott,
14    and Shan Lo.
15              THE COURT:  Good morning.
16              (Counsel respond "Good morning.")
17              THE COURT:  All right.
18              MR. PHILLIPS:  Your Honor, good morning.  This
19    is Jack Phillips.  With me on the line is Kevin Warner of
20    Winston & Strawn on behalf of Watson.
21              THE COURT:  Good morning.
22              MR. BURNETT:  Good morning, Your Honor.  William
23    Burnett, Flaster Greenberg, on behalf of Apotex.  I have
24    with me on the line Jeff Cohen, as well as Craig Kuchii from
25    Katten Muchin, for Mylan.
```

1           THE COURT:  Good morning, gentlemen.

2           MR. BRAUERMAN:  Good morning, Your Honor.  Steve

3    Brauerman from Bayard on behalf of the Lupin defendants.

4    Joining me on the line is Barry White from Frommer,

5    Lawrence & Haug, and I believe he has a colleague as well.

6           MR. WHITE:  Your Honor, Barry White, with Julie

7    Kurzrok.  Thank you.

8           THE COURT:  Good morning.

9           MR. SHAW:  Good morning, Your Honor.  John Shaw

10   and Karen Keller for Mylan.  Joining us from Kilpatrick

11   Townsend is Richard Meyer.

12          THE COURT:  Good morning.

13          I think that's everyone.  Right?

14          Counsel, I have just signed the stipulation

15   regarding consolidation.

16          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

17          THE COURT:  I think everyone is aware of what I

18   am talking about.  That is Docket Item 216.

19          So I am in receipt of your letter, which has two

20   items.  Have either of these matters been resolved?

21          MR. SIAVELIS:  No, Your Honor, they have not.

22          THE COURT:  Let me note the footnote -- let's

23   talk about that for a moment -- that plaintiffs don't

24   believe the parties have had an adequate opportunity to meet

25   and confer, which you know I do require in order to ripen

1   these things for discussion with me, why is plaintiff saying
2   that?

3            MR. LIPSEY:  Your Honor, let me address the
4   first point.

5            Point No. 1 deals with some documents that were
6   produced on September 21 and 23.  There are two types of
7   materials there.  One were the materials that were presented
8   to the defendants during the 30(b)(6) deposition that we
9   were ordered to provide on the facts underlying our
10  secondary considerations.  And those were largely distilled
11  down to a volume that we gave them at the deposition that
12  had 38 documents in it that reflected the facts that we
13  might rely on.

14           The second, and I gather the more troublesome,
15  is that there was a very large number, 45,000 or so, pages
16  of documents that were produced by us basically as an
17  accommodation to try to avoid a discovery dispute that were
18  commercial documents, marketing documents.  And we had early
19  on in the case said we would not rely on commercial success
20  precisely to avoid the burden and expense of producing
21  marketing documents.  But in an effort to avoid a dispute on
22  those, we did agree in the end that we would produce them.
23  And we worked very hard to gather them together.

24           THE COURT:  Counsel, let me interrupt.  My
25  question had to do with why you feel that you have not had

1  adequate opportunity to discuss why the matter is not ripe,

2  because you are going on a bit.  It is a pretty simple

3  question.

4          MR. LIPSEY:  The point is, we have offered a

5  deposition to try to deal with their complaint about the

6  other documents that were produced, frankly, that we thought

7  were irrelevant.  But in an effort to try to compromise that

8  as well, we offered a deposition.  We have never gotten any

9  serious response from them about what it is they need.  And

10  that is why we felt it wasn't ripe.

11          THE COURT:  Let me hear from the other side on

12  that.

13          MR. SIAVELIS:  Your Honor, to cut to the chase,

14  we conducted a lengthy meet-and-confer on November 14th.

15  The parties also exchanged four letters on this issue.

16          Frankly, Your Honor, we are at an impasse.

17  Further discussion between the parties seems unproductive.

18  That's why we need the Court's assistance.

19          THE COURT:  Fair enough.  Why don't I let you

20  get into the meat of the issue then -- it's your

21  complaint -- about plaintiffs' behavior.  Go ahead.

22          MR. SIAVELIS:  Thank you, Your Honor.

23          As Mr. Lipsey indicated, there was a late

24  production of documents by Cephalon.  The actual number is

25  over 50,000 pages of documents.  The late production

1   involved three main points, Your Honor.

2              First, the Court originally set the close of

3   fact discovery for August 19th, and we are in the midst of

4   expert discovery, with response reports due today.

5              A stipulated order followed a discovery

6   teleconference on September 8th and extended the close of

7   fact discovery for a very limited number of items until

8   September 23rd.

9              During the September 8th teleconference, the

10  Court ordered an additional Rule 30(b)(6) deposition

11  relating to secondary considerations.  That occurred on

12  September 23rd.  At 10:45 p.m. on the evening of September

13  21st, and without warning, Cephalon produced 1100 pages of

14  internal documents relating to secondary considerations.

15  Cephalon provided no explanation that these documents

16  pertained to the next day's deposition.

17             To make matters worse, Your Honor, on September

18  23rd, Cephalon produced nearly 50,000 pages of internal

19  documents, again relating to secondary considerations, near

20  the close of the deposition that you ordered.

21             It is important to note, Your Honor, that the

22  late production did not include actual hard copies of

23  documents.  Instead, defendants have to access an FTP

24  website and download and print the documents.  So there is

25  an inherent delay in actually seeing and reviewing the

1    documents from when the letter or e-mail is sent notifying

2    of the availability of the FTP.

3            The third point, Your Honor, encompasses the

4    prejudice suffered by the defendants.

5            Essentially, Cephalon's late production of over

6    50,000 pages of documents requires a re-do of fact discovery

7    while expert discovery is ongoing.  Unfortunately, a re-do

8    of fact discovery is not feasible here.  And Cephalon has

9    yet to propose a reasonable solution that does not put

10   defendants at further disadvantage.

11           We expect a number of the late-produced

12   documents to be included in Cephalon's rebuttal expert

13   reports, which are to be served later today.

14           Essentially, Cephalon's experts are going to be

15   rendering opinions based in part on these late-produced

16   documents without defendants having had the opportunity to

17   take discovery on the facts provided in those documents.

18           This is exactly the scenario that we raised with

19   you and warned of near the end of our September 8th telecon

20   and which led the Court to order the additional 30(b)(6)

21   deposition.

22           So Cephalon's late production of these 50,000

23   pages of documents has thwarted defendants from taking full

24   discovery on the alleged secondary considerations.

25           This leaves us with two options, Your Honor, as

```
 1    we see it.   First, Cephalon is prevented from arguing
 2    secondary considerations.   Second, the second option,
 3    Cephalon and its experts are prevented from relying on the
 4    late-produced documents.
 5                    THE COURT:   Mr. Lipsey, hold on.
 6                    I am writing.
 7                    MR. LIPSEY:   Okay.
 8                    (Pause.)
 9                    THE COURT:   Go ahead, Mr. Lipsey.
10                    MR. LIPSEY:   Okay.
11                    Let's speak first about the deposition, the
12    30(b)(6) deposition on secondary considerations.
13                    We tried to bundle up in a bow, in a very neat
14    package, the documents that reflected the facts that we
15    might rely on.   We put them in a binder and handed them to
16    them at that deposition, rather than having them try to
17    wrangle out of the witness by question and answer what all
18    of those materials were.   And I think I can represent that
19    our experts --   indeed, we don't intend to rely on anything
20    that wasn't marked in that deposition.
21                    The 50,000 pages of documents that they are
22    talking about are documents that we contend aren't relevant
23    at all, let alone relevant to secondary considerations.   And
24    we produced those simply --
25                    THE COURT:   When were the documents that were
```

1    marked during the deposition produced?

2                    MR. LIPSEY:  I am sorry?

3                    THE COURT:  When were the documents you have

4    just referenced, that were marked during the deposition,

5    produced?

6                    MR. LIPSEY:  A significant number of them had

7    been previously produced.  Some of them were produced the

8    day before.

9                    THE COURT:  What percentage of the documents

10   that were marked and used in the deposition were produced

11   the day before, of the total that we are talking about, that

12   are relevant to that witness?

13                   MR. LIPSEY:  I believe, just quickly looking --

14                   THE COURT:  Maybe defendants can tell me.

15                   MR. LIPSEY:  I don't think -- if it was half I

16   will be surprised, in terms of the number of documents.  One

17   of them had a large number of pages.

18                   MR. SIAVELIS:  Your Honor, to try and answer

19   your question, I did not count exact pages.  But I can tell

20   you that that binder that Mr. Lipsey is talking about, that

21   Cephalon produced at the outset of the extra deposition, the

22   additional deposition, included 38 documents.  19 of those

23   38 documents were late-produced documents.

24                   That binder is roughly four inches tall, with

25   about a thousand pages.

 1         That leaves about 49,000 other pages.

 2         Mr. Lipsey mentioned something that I think is

 3  not accurate and certainly defendants do not agree on.  He

 4  essentially said that Cephalon selected documents that it's

 5  going to rely upon.  What about the other documents, the

 6  other pages in there?  Those documents could actually be

 7  more helpful for defendant and dispute the contentions and

 8  opinions that their experts are relying on.

 9         Essentially, Cephalon cherry-picked the best

10  documents to help itself and then is trying to cabin us to

11  those documents.  We don't think that is appropriate.  There

12  may be other documents and facts in those documents that

13  dispute the points their experts are relying upon.

14         THE COURT:  Fair enough.  The point is made.

15  Let me let Mr. Lipsey continue.

16         MR. LIPSEY:  We disagree.  That is not going to

17  solve the problem.

18         To the extent they feel that there is stuff in

19  those other documents that we produced to avoid the dispute

20  that they need to interrogate a witness about, we have

21  offered a 30(b)(6) witness to answer those questions in an

22  effort to avoid this dispute.  The point in my footnote was

23  that we really haven't had a meaningful discussion on that

24  because the defendants seem insistent on simply trying to

25  have a nuclear option of excluding all testimony on

1    secondary considerations, even though we gave them what we

2    were ordered to produce, which is what we were contending.

3    That's what the deposition was about.  That's why we gave

4    them those documents.

5              MR. SIAVELIS:  Your Honor, first of all, we

6    don't think that a single Rule 30(b)(6) deposition will be

7    sufficient at this point.  Also, there are practical reasons

8    that I will address in a second.  The single deposition is

9    not an adequate remedy, because, when is this additional

10   discovery going to occur?  We are in the middle of expert

11   discovery.

12             By the way, we don't think that these documents

13   are just limited to one 30(b)(6) witness.  We have taken a

14   number of depositions.  And these documents would have been

15   utilized in those other depositions, including French

16   deponents and inventor deponents, that have already

17   occurred.

18             We told Cephalon, in a letter, and during the

19   meet-and-confer, that a single deposition is not practical.

20   More discovery is required by these documents because they

21   undercut, in our estimation, in our view, they undercut the

22   alleged secondary considerations.  We don't understand how a

23   single deposition could be fit into the calendar at this

24   point.

25             MR. LIPSEY:  If I may.

1          THE COURT:  Go ahead.

2          MR. LIPSEY:  To the extent that there is

3    anything newly produced in the binder we gave them -- and I

4    must reiterate, we are not intending to rely on anything

5    that isn't in the binder -- those materials --

6          THE COURT:  But, Mr. Lipsey, you should address

7    Mr. Siavelis's point regarding those items that it might

8    have wanted to inspect on its own, regardless of whether

9    Cephalon intends to rely upon the documents.

10          MR. LIPSEY:  Indeed, Your Honor, that was why we

11   have offered the deposition.

12          THE COURT:  But here is my question for you in

13   this regard:  Why the late production?

14          MR. LIPSEY:  The Court ordered us to provide a

15   witness to articulate the points that we might rely on --

16          THE COURT:  Did I not allot enough time when we

17   talked last to enable you to make the production and have

18   the other side have at the documents so that they could

19   conduct a meaningful deposition?  Did I not allot enough

20   time?

21          MR. LIPSEY:  Your Honor, the order, as I

22   understand it, was September the 7th, the deposition was

23   September the 23rd.  We were scrambling around with a lot of

24   other discovery at the close there.  We did the best we

25   could.  If they feel --

1          THE COURT:  Mr. Siavelis, did they do the best

2     they could?

3          MR. SIAVELIS:  No, Your Honor, they didn't.

4     Quite frankly, they did not.

5          I think Mr. Lipsey is taking some liberty with

6     what the Court ordered.  The Court ordered a half-day

7     deposition, a 30(b)(6) deposition on the underlying facts

8     related to the secondary considerations, not the documents

9     that Cephalon intended to rely upon.  And that's not what we

10    talked about on the September 8th telecon with you, Your

11    Honor.  The issue is broader than that.

12         It is the underlying facts.  It is just not

13    narrowly limited to the facts that Cephalon cherry-picks to

14    support its position.

15         THE COURT:  So, Mr. Lipsey -- go ahead.  Who is

16    this?

17         MR. SIAVELIS:  Your Honor, it is important to

18    note that documents regarding secondary consideration are

19    responsive to RFPs, requests for production, served by

20    Sandoz in June of 2010, and RFPs served by Mylan and Lupin

21    in April of 2010.  These are longstanding RFPs.  They just

22    didn't spring up overnight or after the September 8th

23    telecon.  They have been pending, in Sandoz's case, for 14

24    months from the date of service to the date of the late

25    production, and, in Mylan and Lupin's case, 16 months.

 1          THE COURT:  Mr. Siavelis, you mentioned that

 2   these documents, after inspection, revealed other areas of

 3   inquiry that you might have wanted to have had with other

 4   deponents.  Was that on other subject matter as well as

 5   secondary considerations?

 6          MR. SIAVELIS:  Your Honor, primarily, it's

 7   within the secondary considerations alleged by Cephalon.  I

 8   can give you an example if you want.

 9          THE COURT:  Go ahead.

10          MR. SIAVELIS:  The documents, the late-produced

11   documents contradict testimony of Cephalon witnesses

12   regarding efforts to convert patients from Provigil to

13   Nuvigil, the drug at issue, potential off-label usage, and

14   whether Nuvigil is merely a line extension.

15          Issues like that go to the secondary

16   considerations that Cephalon has put in play.  That's why we

17   would need to take additional discovery if the Court orders,

18   not just one deposition.  We essentially have to renew fact

19   discovery.

20          THE COURT:  Let's just flesh that out a little

21   bit, Mr. Siavelis.  More specifically, what would be

22   required were I to be inclined to not accede to your request

23   or some form of the request, in other words, reopen

24   discovery?  What would that look like?

25          MR. SIAVELIS:  That would look horrible, as far

1   as the calendar is concerned.  But I think, Your Honor, that

2   we would need to do at least another 30(b)(6) deposition, as

3   well as the depositions of Dr. Mallamo and possibly French

4   inventors and deponents.  And the three of them come to mind

5   off the top of my head.  When I say French deponents and

6   inventors, I mean persons whose depositions occurred in

7   France.  The Court probably recognizes the rigamarole that

8   we go through in foreign discovery.

9         THE COURT:  Do other defendants concur in this

10   view?

11         MR. WHITE:  Lupin does, Your Honor.

12         MR. LIPSEY:  Your Honor --

13         THE COURT:  Hold on, Mr. Lipsey.

14         Are there any other defendants other than Lupin?

15         MR. WARNER:  Watson agrees, Your Honor.

16         MR. MEYER:  Mylan agrees, also, Your Honor.

17         THE COURT:  What I am hearing is that you agree.

18   That's a direct response to my question.  Do you also agree

19   in the essence of the arguments that Mr. Siavelis has made

20   and his factual presentation?

21         MR. MEYER:  Unquestionably.

22         THE COURT:  Other counsel concur in that?

23         MR. WHITE:  Yes, Your Honor.

24         MR. WARNER:  Yes, Your Honor.

25         MR. KUCHII:  This is Craig Kuchii for Apotex.

1   We concur as well.

2           THE COURT:  Mr. Lipsey.

3           MR. LIPSEY:  Very briefly.

4           The allegedly newly produced documents relate to

5   medical experience with the drug following its introduction.

6   None of that has anything to do with the French inventors.

7   To the extent there are other depositions that they think

8   they need to legitimately flesh out these documents, we are

9   receptive to those requests.

10          THE COURT:  I am not going to order new

11  depositions, Mr. Lipsey.  I have decided that much thus far,

12  after listening to what I have listened to.

13          MR. LIPSEY:  If they want to -- well, I mean, if

14  they want more time with the witness than they had to go

15  through these things, we are happy to do that.

16          THE COURT:  Let's talk for a moment about where

17  we are in the schedule.

18          Today we are at the deadline for a round of

19  expert reports.  Is that correct?  I don't have the schedule

20  in front of me.

21          MR. SIAVELIS:  Yes, Your Honor.  Responsive

22  expert reports are due today.  Rebuttal reports are due

23  December 16th.  Expert discovery closes February 3rd.

24          THE COURT:  Okay.

25          MR. LIPSEY:  Your Honor, our trial date is in

1   July.  If there needs to be an accommodation here to deal

2   with this, there is time.

3              THE COURT:  Yes.  But you know, Mr. Lipsey, I am

4   not so sure that I am prepared, under the circumstances as I

5   perceive them to be -- and let me tell you that I am not

6   satisfied with your answer as to why the late production.

7   Also, it would appear -- let me leave it there.  I just

8   don't understand it.  I thought we had tried to remedy this

9   and avoid this possible scenario arising last time.  And

10  counsel is correct, I seem to recall -- I can't say I have

11  specific recollection -- but somewhere percolating in the

12  back of my mind about this was a warning that this could

13  come to pass, the situation about which the defendants

14  complain.  And it's not fair to them.  And I appreciate the

15  fact that you are willing to offer a new deposition or

16  depositions, but that sounds to me like that's going to

17  incur significant new expense.

18             I am not moving any deadlines in terms of trial

19  and pretrial conference.  I am just not going to do that.

20             I am a little concerned about the complaint that

21  the defendants have made about time, time to do things, in

22  addition to the cost of doing those things, even if we can

23  find the time.

24             What is your suggestion, Mr. Lipsey?

25             MR. LIPSEY:  My suggestion is I think that when

 1   they see our expert reports there are going to be no

 2   surprises there.  They are going to be out later in the day.

 3           I think that if they genuinely think they need

 4   something to respond to that, you will find us remarkably

 5   receptive to getting it to them exceptionally promptly.  I

 6   guess what I would suggest is perhaps we ought to let that

 7   process play out and see where we are.

 8           THE COURT:  Mr. Siavelis, your reaction?  Let me

 9   tell you all that I am normally disinclined to -- I don't

10   mean this the way it's going to sound.  It's Thanksgiving, I

11   am in a good mood and everything.  I am not going to allow

12   shenanigans, lawyer shenanigans and gamesmanship to

13   interfere with the clients' that you represent ability to

14   have their claims fully fleshed out and their defenses fully

15   heard.  It really bothers me when that happens.  I won't be

16   reluctant to impose what essentially would be a sanction of

17   some sort if I were to accede to the request, one or more of

18   the requests that Mr. Siavelis has made, or come up with

19   something else.  I don't know.

20           Mr. Siavelis.

21           MR. SIAVELIS:  Your Honor, Mr. Lipsey's approach

22   kicks the can down the road.  That's all it does.  We will

23   be back here again in another week, after the holidays, and

24   we will be dealing with this problem then.  We don't think

25   that that is appropriate.  We think that causes further

1  prejudice.

2          If I am understanding Mr. Lipsey's response as

3  well, he is intimating that the rebuttal expert report may

4  not include reliance on any of these late-produced

5  documents.

6          MR. LIPSEY:  I was not intimating that.  What I

7  am saying is there will be no surprises.

8          MR. SIAVELIS:  Let's look at a hypothetical,

9  then, Your Honor.  If those response reports do not include

10  reliance on any late-produced documents, defendants are

11  still handicapped or prejudiced because we have not had the

12  ability to take discovery and flesh out our positions as

13  they relate to the late-produced documents.  We haven't been

14  able to ask witnesses questions about those documents, which

15  are Cephalon documents.  They are not third-party documents.

16  They are Cephalon documents.

17          In addition, the other scenario is, if the

18  rebuttal reports are simply response reports, if they

19  include reliance on the late-produced documents, that is the

20  easier situation, I guess, then, because defendants'

21  prejudice is clearer in that we haven't had a chance to take

22  discovery on the documents that the experts themselves rely

23  upon.

24          So either way you look at it, we are prejudiced

25  here.  And the Court was very clear, Your Honor was very

1    clear in that September 8th teleconference.  And

2    interestingly enough, Cephalon's counsel said during that

3    teleconference that we should have a very select, itemized

4    list for additional discovery, which will be designed to

5    prevent a free-for-all going forward.

6               Those were his words.  That is exactly what has

7    transpired as a result of the late production.

8               THE COURT:  Mr. Siavelis, please prepare an

9    order for my signature which precludes any evidence on

10   secondary considerations.

11              I don't think the alternative you suggested

12   really is adequate, as you have suggested, because you

13   didn't get a chance to look -- that then hamstrings the

14   defendants in a way that I think is unfair.

15              What I mean by that is, as we have discussed

16   several times here, those are documents, preventing the

17   plaintiffs' expert from relying on late-produced documents

18   upon which they relied doesn't give you, in essence, the

19   defendants, the opportunity to have examined the deponents

20   on documents upon which they didn't rely, which you were

21   entitled to do.

22              I hope I am not being too obtuse and unclear in

23   that.

24              MR. LIPSEY:  Your Honor --

25              THE COURT:  Mr. Lipsey, I have heard from you.

1    I have heard from both sides.  I ruled.

2            Do you understand what I need, Mr. Siavelis?

3            MR. SIAVELIS:  Yes.  If I just may repeat it

4    real quickly, Your Honor.  An order reflecting that Cephalon

5    is prevented or precluded from relying on any evidence of

6    secondary considerations.

7            THE COURT:  That's it.  You can have some

8    language in there, some preamble, you know, "After hearing

9    counsel today," or however you want to phrase it.

10           MR. LIPSEY:  Does that apply to the documents

11   that weren't late produced, Your Honor?

12           THE COURT:  I am precluding secondary

13   considerations, period.

14           MR. LIPSEY:  Because the documents that were

15   late produced only relate to some secondary considerations.

16   That is the point I am trying to make.

17           THE COURT:  Mr. Siavelis.

18           MR. SIAVELIS:  We don't know that, Your Honor,

19   the accuracy of that statement, because there is 50,000

20   pages of late-produced documents.  They could pertain to all

21   of the alleged secondary considerations.  That's the heart

22   of the matter.  We haven't been able to take discovery on

23   that.

24           MR. LIPSEY:  Your Honor, they are all commercial

25   documents, those are not scientific documents, relating to

1    things like the inadequacy of the prior art process to

2    produce a useful --

3              THE COURT:  What about the commercial documents,

4    Mr. Siavelis?

5              MR. SIAVELIS:  So Mr. Lipsey says.  There is

6    50,000 pages in there, Your Honor.  It doesn't look like

7    it's just commercial documents, whatever commercial

8    documents are, however Mr. Lipsey defines those.  There is

9    more than that --

10             THE COURT:  If we are talking about commercial

11   documents and we can agree on the definition, and everybody

12   agrees they are commercial documents, I am willing to

13   further narrow the order at an appropriate time.  But right

14   now, I am going to instruct you to draft it in the broad

15   terms.  And perhaps what you and Mr. Lipsey can do is agree

16   on a footnote to the order concerning this issue of

17   commercial documents, that the Court is willing to revisit

18   it.

19             MR. LIPSEY:  We will work that out, Your Honor.

20             THE COURT:  Mr. Siavelis, do you think you and

21   Mr. Lipsey can work that out, a footnote?

22             MR. SIAVELIS:  We will try to, Your Honor.

23             THE COURT:  I need you to do that.  Okay?

24             MR. SIAVELIS:  Defendants will definitely try

25   to, Your Honor.

 1              THE COURT:  All I am trying to do is leave an

 2      avenue open, in fairness to both parties, if the defendants

 3      are not going to be prejudiced as a result of these

 4      documents, these docs, late produced or otherwise, having

 5      been essentially commercial documents, let me say, that were

 6      otherwise available and not late produced, and not docs that

 7      were used in the expert depositions, then it may be the case

 8      that you suffer no real prejudice.  Am I being clear about

 9      that?

10              MR. LIPSEY:  Your Honor, that was basically

11      Cephalon's point.  Thank you.

12              THE COURT:  Mr. Siavelis, are we in accord on

13      this?

14              MR. SIAVELIS:  I think so, Your Honor.  I have a

15      fundamentally tough time understanding what Mr. Lipsey means

16      by commercial documents.

17              THE COURT:  That's an issue to be visited later.

18      You two can discuss that offline, and maybe you can agree,

19      or not, and maybe the footnote won't be necessary.  But I am

20      leaving, at least, a sliver of light there in this regard.

21      Okay?

22              MR. SIAVELIS:  Okay.  Thank you, Your Honor.

23              THE COURT:  Counsel, get that over after the

24      holidays.  All right?

25              MR. LIPSEY:  Thank you, Your Honor.

1                    THE COURT:    Happy Thanksgiving.

2                    (Counsel respond "Thank you.")

3                    (Conference concluded at 10:03 a.m.)

4                              -   -   -

5      Reporter:    Kevin Maurer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit FF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ARMODAFINIL PATENT LITIGATION | MDL Docket No. 1:10-md-2200-GMS |
| CEPHALON INC. and CEPHALON FRANCE, Plaintiffs, v. MYLAN PHARMACEUTICALS INC., Defendant. | Civil Action No. 1:09-cv-954-GMS |
| CEPHALON INC. and CEPHALON FRANCE, Plaintiffs, v. WATSON LABORATORIES, INC., Defendant. | Civil Action No. 1:10-cv-7-GMS |
| CEPHALON INC. and CEPHALON FRANCE, Plaintiffs, v. SANDOZ INC., Defendant. | Civil Action No. 1:10-cv-55-GMS |
| CEPHALON INC. and CEPHALON FRANCE, Plaintiffs, v. LUPIN LIMITED, Defendant. | Civil Action No. 1:10-cv-210-GMS |
| CEPHALON INC. and CEPHALON FRANCE, Plaintiffs, v. APOTEX CORP. and APOTEX INC., Defendants. | Civil Action No. 1:10-cv-695-GMS Civil Action No. 1:10-cv-1078-GMS |

## [PROPOSED] ORDER PRECLUDING EVIDENCE OF SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS

WHEREAS, the Court conducted a teleconference on November 23, 2011 with counsel for the parties regarding Plaintiffs' production of documents, videos and other materials on September 21 and 23, 2011, and Plaintiffs' failure to timely disclose that evidence of secondary considerations of non-obviousness (*see* Joint Agenda Letter, D.I. 218),

WHEREAS, after hearing the arguments of the parties on these issues,

IT IS ORDERED that:

For the reasons set forth during the teleconference, Plaintiffs are precluded from relying upon secondary considerations of non-obviousness.[1]

Dated: December 7, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

---

[1] Plaintiffs may petition the Court to narrow this Order to permit them to rely upon documents relating to "non-commercial" aspects of secondary considerations where: (i) all such documents were timely produced during fact discovery; and (ii) Defendants will not otherwise be prejudiced by Plaintiffs' reliance upon such documents. Plaintiffs agree to identify all documents upon which they intend to rely, and afford Defendants' counsel seven days to review them and conduct a meet and confer with Plaintiffs' counsel, prior to petitioning the Court for relief from this Order.

# Exhibit GG

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

IN RE: ARMODAFINIL PATENT LITIGATION )          MDL Docket No. 10-md-2200-GMS

## ORDER

WHEREAS on November 23, 2011, the court conducted a telephonic discovery dispute hearing with the parties[1];

WHEREAS after having heard the parties' positions and explanations regarding Cephalon's continued late production of discovery the court ruled that there would be no further depositions;

WHEREAS based on these discovery abuses and the prejudice Cephalon caused the defendants, the court required the defendants to draft an order to preclude Cephalon from relying upon any secondary considerations of non-obviousness (the "Preclusion Order");

WHEREAS based on Cephalon's representation—after the preclusion ruling—that all of the late-produced documents were "commercial documents," the court offered a "sliver of light" permitting Cephalon to later petition the court to narrow the order to rely upon certain documents for non-obviousness if it could be agreed that: (1) all such documents were timely produced during fact discovery; and (2) the defendants will not otherwise be prejudiced by Cepahlon's reliance upon such documents[2];

---

[1] In this multi-district litigation, the plaintiffs are Cephalon, Inc., and Cephalon France (collectively "Cephalon"), and the defendants are Mylan Pharmaceuticals Inc., Watson Laboratories, Inc., Sandoz, Inc., Lupin Limited, Apotex Corp., and Apotex Inc. (collectively "the defendants").
[2] *See* Transcript of telephonic Hearing, November 23, 2011, D.I. 222, at 24-27.

WHEREAS on January 4, 2012, Cephalon filed a Motion to Narrow Order Regarding Secondary Considerations of Non-Obviousness (D.I. 234), which has now been fully briefed by both sides;

WHEREAS in consideration of the foregoing, the submitted briefing, further discussions at yesterday's pre-trial conference, and the relevant law, the court concludes that Cephalon has not provided a legitimate reason to lift or modify the Preclusion Order;

IT IS HEREBY ORDERED that Cephalon's Motion to Narrow (D.I. 234) is DENIED.[3]

Dated: June 26, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

---

[3] Cephalon asks the court to narrow its Preclusion Order to allow it to rely on "copying" and "long-felt need" as "non-commercial" secondary considerations. Cephalon contends that the defendants will not be prejudiced if the Preclusion Order is narrowed because "[a]ll documents upon which Cephalon seeks to rely for these secondary considerations were timely identified . . . ." (D.I. 234 at 1.) The defendants disagree, and point out that their main source of prejudice results from having been denied the opportunity to conduct full discovery on the issues implicated in any and all of the late-produced documents. The court agrees with the defendants. The defendants no longer have the benefit of the additional information that could have been developed and discovered during a proper examination of the late-produced documents, including through their use during depositions. It would be inherently unfair, and contrary to the purpose of, and reasoning behind, the Preclusion Order, to give Cephalon the unfair advantage of being able to rely upon cherry-picked secondary considerations of long-felt need and copying, while those documents potentially unfavorable to its position remain buried within its late production to the defendants. Obviousness is determined in light of all the circumstances surrounding the alleged invention. Therefore, even if Cephalon timely-produced some documents related to some secondary considerations, the defendants remain prejudiced because the late-produced documents may contain relevant information that the defendants could have relied upon to rebut the timely-produced materials.

Furthermore, Cephalon has not sufficiently defined what it believes is, or is not, a "commercial document." As the defendants point out in their brief, many of the late-produced documents contain information relevant to the "technical" or "scientific" considerations of non-obviousness. (D.I. 246 at 9.)

Cephalon also requests that the court confirm that its Preclusion Order does not prevent it from relying on evidence with respect to other issues in this case, such as infringement (now out of the case) and *prima facie* obviousness. The court agrees with the defendants that the Preclusion Order is unambiguous on its face and requires no clarification. As was pointed out by the defendants during the continued discussion of this issue during yesterday's pre-trial conference, the matter was fully aired (some twenty pages of transcript) back in November, and no new information has come to light since then. The court previously ruled that Cephalon is precluded from relying on any evidence of secondary considerations and now declines to alter or narrow that ruling.